{¶ 1} Jimmy L. Jones appeals his convictions for possession of a controlled substance, trafficking in drugs, and carrying a concealed weapon, claiming he received ineffective assistance of counsel. Jones first argues that his trial counsel should have moved to suppress the evidence obtained as a result of his illegal detention. However, Jones' detention was reasonable as he had no identification and the officers detained him to verify his identity for purposes of issuing a traffic citation. Thus, a motion to suppress would have been fruitless.
 {¶ 2} Jones next argues that his counsel was ineffective when he failed to object to certain hearsay statements. However, the statements at issue were either not hearsay or were later testified to by the declarant.
 {¶ 3} Jones also contends that the prosecutor made improper comments during closing argument. Review of the closing arguments reveals that the prosecutor's *Page 2 
remarks were either fair comment in response to defense counsel's closing argument or did not change the outcome of the trial.
 ¶ 4} Jones also argues that he received ineffective assistance of counsel when his trial counsel failed to move for acquittal on the charge of carrying a concealed weapon because the gun was in open view. However, the officer testified he saw the shape of a gun underneath a shirt on the car floor. Therefore, when this evidence is viewed in the light most favorable to the prosecution, it is clear that a motion for acquittal would have been unsuccessful.
 {¶ 5} Jones argues that the cumulative effect of the alleged errors deprived him of his right to a fair trial. However, having found no merit in any of Jones's contentions of error and viewing the totality of the evidence presented to the jury, we reject this argument.
 {¶ 6} Additionally, we sua sponte ordered the parties to file supplemental briefs addressing whether the trial court committed plain error in admitting evidence that Jones sold drugs to a police informant prior to his arrest in this case. Upon review of those briefs, we choose to analyze them in the context of ineffective assistance of counsel. Given the lack of substantial evidence to establish the prior drug sale, its lack of relevance to establishing a plan, motive or identity of the perpetrator of this crime, and its highly prejudicial impact, we conclude counsel's failure to object resulted in ineffective assistance. Thus, we reverse.
 I. FACTS {¶ 7} Trooper Brian Conley of the Ohio Highway Patrol was conducting a traffic stop on U.S. 23 when he heard a car with what he believed to be a defective exhaust. *Page 3 
Trooper Conley radioed Trooper Lana Spriggs who was north of him and told her to be on the lookout for the car, a white Firebird. Trooper Spriggs saw the car and waived it over. Trooper Spriggs approached the car and asked the driver, Kimberly Wise for her driver's license, registration, and proof of insurance. Wise gave Trooper Spriggs her driver's license, but she did not have the car's registration. Wise and Jones, who was a passenger, provided a title in the name of Roger Moore. The title had been recently signed over to Jimmy Jones. Trooper Conley arrived at the scene, and he and Trooper Spriggs attempted to ascertain Jones' identity in order to issue him a citation for a seatbelt violation.
 {¶ 8} Jones stated he did not have a driver's license or any identification. Jones provided a name and date of birth, but he was unable to remember his social security number. Trooper Conley ran the information through the LEADS system but was unable to verify Jones' identity. This raised the troopers' suspicion because they felt it was unusual for someone of Jones' age — 18 — not to have a driver's license or some sort of identification.
 {¶ 9} Trooper Conley asked Officer Steve Timberlake of the Portsmouth Police Department to respond to the scene to see if he could identify Jones. When Timberlake arrived, Conley told him about the tattoo on Jones' arm that read "Man-Man." Officer Timberlake was familiar with a person with the nickname "Man-Man" from his work with the narcotics unit. He had also made controlled buys of drugs from a house in Portsmouth and had observed a white Firebird registered to Roger Moore at that location. Officer Timberlake approached Jones and said, "You must be Man-Man." According to Timberlake, Jones' expression immediately changed and Jones got an *Page 4 
"Oh, crap" look on his face. Officer Timberlake informed the troopers that if Jones was in fact Man-Man, he was known to sell drugs and carry weapons.
 {¶ 10} The troopers removed Wise and Jones from the car and searched them. When Wise got out of the car, Officer Timberlake saw a shirt on the floorboard behind the driver's seat that was rolled up and had the shape of a handgun. Upon examination, they found a handgun and a magazine with live rounds in the shirt.
 {¶ 11} Trooper Spriggs questioned Wise, who admitted that she had drugs hidden under her breasts, but she claimed they belonged to Jones. Trooper Spriggs searched Wise and discovered marijuana as well as twenty-five baggies of crack cocaine. At trial, Wise testified that Jones asked her to drive him to Columbus to "reload" his drug supply. Wise also testified that before they left for Columbus someone had brought Jones a handgun and that he had wrapped it in the shirt and carried it to the car. She also explained that Jones gave her the drugs and asked her to hold them for him. Jones denied that the drugs were his, but he gave a statement acknowledging that he knew the handgun was in the car.
 {¶ 12} The grand jury indicted Jones on one count of possession of a controlled substance, R.C. 2925.11(A) and (C)(4)(e); one count of trafficking in drugs, R.C. 2925.03(A)(2) and (C)(3)(f); and one count of carrying a concealed weapon, R.C. 2923.12(A). The matter proceeded to trial where the jury convicted Jones on all counts.
 {¶ 13} Jones filed this appeal and asserts the following assignment of error:
 I. MR. JONES WAS DENIED HIS RIGHTS UNDER THE UNITED STATES AND OHIO CONSTITUTIONS TO THE EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS TRIAL ATTORNEY FAILED TO CHALLENGE MR. JONES'S ILLEGAL DETENTION AND ULTIMATE ARREST, BOTH OF WHICH OCCURRED IN VIOLATION OF MR. JONES' [SIC] RIGHTS UNDER THE FOURTH AMENDMENT TO THE *Page 5 
FEDERAL AND STATE CONSTITUTIONS.
 II. MR. JONES WAS DENIED HIS RIGHTS UNDER THE UNITED STATES AND OHIO CONSTITUTIONS TO THE EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS TRIAL ATTORNEY REPEATEDLY FAILED TO OBJECT TO THE ADMISSIBILITY OF HIGHLY PREJUDICIAL EVIDENCE WHICH WAS OFFERED IN VIOLATION OF THE OHIO RULES OF EVIDENCE.
 MR. JONES WAS DENIED HIS RIGHTS UNDER THE UNITED STATES AND OHIO CONSTITUTIONS TO A FAIR TRIAL WHEN THE PROSECUTING ATTORNEY MADE IMPROPER AND PREJUDICIAL REMARKS DURING CLOSING ARGUMENTS.
 MR. JONES WAS DENIED HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS TRIAL ATTORNEY FAILED TO MOVE FOR AQUITTAL [sic] AT THE CLOSE OF THE STATE'S CASE AND THE STATE'S OWN EVIDENCE NEGATED AN ESSENTIAL ELEMENT OF THE CRIME OF CARRYING A CONCEALED WEAPON.
 THE CUMMULATIVE EFFECT OF THE ERRORS MADE BY TRIAL COUNSEL DENIED MR. JONES HIS CONSTITUTIONAL RIGHTS TO THE EFFECTIVE ASSISTANCE OF COUNSEL AND A FAIR TRIAL.
 II. INEFFECTIVE ASSISTANCE OF COUNSEL {¶ 14} All of Jones's assignments of error contend he received ineffective assistance of counsel. The Sixth Amendment to the United States Constitution and Section 10, Article I, of the Ohio Constitution provide that defendants in all criminal proceedings shall have the assistance of counsel for their defense. The Supreme Court of the United States has generally interpreted this provision to mean a criminal defendant is entitled to the "reasonably effective assistance" of counsel. Strickland v. Washington (1984), 466 U .S. 668, 104 S.Ct. 2052,80 L.Ed.2d 674. To prevail on a claim of ineffective assistance of counsel, Jones must show (1) his counsel's performance was deficient in that it fell below an objective standard of reasonable representation, and (2) the deficient performance prejudiced his defense so as to *Page 6 
deprive him of a fair trial. State v. Smith (2000), 89 Ohio St.3d 323,327, citing Strickland, at 687; State v. Bradley (1989),42 Ohio St.3d 136, paragraph two of the syllabus. To establish prejudice, Jones must show that there is a reasonable probability that, were it not for counsel's errors, the result of the proceeding would have been different. State v. White (1998), 82 Ohio St.3d 16, 23;Bradley, at paragraph three of the syllabus. Failure to establish either element is fatal to the claim. Strickland; Bradley. Our review of an ineffective assistance of counsel claim is de novo. See Bradley at 142-143.
 {¶ 15} When considering whether trial counsel's representation is deficient, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. Thus, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id.
 A. Motion to Suppress {¶ 16} In his first assignment of error, Jones argues that he received ineffective assistance of counsel because his trial counsel did not move to suppress evidence obtained as a result of his continued detention after the traffic stop. In order to prevail, Jones must show that, had counsel pursued a motion to suppress, the motion would have been successful. State v. Seward, Ross App. No. 05CA2864, 2006-Ohio-2058, ¶ 10, citing State v. White (1998), 82 Ohio St.3d 16, 23,693 N.E.2d 772.
 {¶ 17} The Fourth Amendment protects individuals against unreasonable searches and seizures. See, e.g., United State v. Arvizu (2002),534 U.S. 266, 273; Terry v. Ohio (1968), 392 U.S. 1, 9. "Searches conducted outside the judicial process, without prior approval by a judge or magistrate, are per se unreasonable under the *Page 7 Fourth Amendment — subject only to a few specifically established and well-delineated exceptions." Katz v. United States (1967), 389 U.S. 347,357. If the defendant demonstrates he was subjected to a warrantless search or seizure, the burden shifts to the State to establish that the search or seizure was constitutionally permissible. See Maumee v.Weisner (1999), 87 Ohio St.3d 295, 297; City of Xenia v. Wallace (1988),37 Ohio St.3d 216, 524 N.E.2d 889, paragraph two of the syllabus.
 {¶ 18} Jones does not argue the initial stop was improper. Instead he cites State v. Robinette (1997), 80 Ohio St.3d 234, and argues that his detention exceeded the time it would have taken for Trooper Sprigg to issue a citation to Wise for the defective exhaust, which served as the initial reason for the stop.
 {¶ 19} In Robinette, the Supreme Court of Ohio held:
 When a police officer's objective justification to continue detention of a person stopped for a traffic violation for the purpose of searching the person's vehicle is not related to the purpose of the original stop, and when that continued detention is not based on any articulable facts giving rise to a suspicion of some illegal activity justifying an extension of the detention, the continued detention to conduct a search constitutes an illegal seizure
 {¶ 20} Here Trooper Spriggs observed a different traffic violation upon approaching the car, i.e., Jones's failure to wear a seat belt. Trooper Spriggs decided to issue Jones a citation for that violation and attempted to ascertain his identity in order to do so. Thus, we must decide whether the length of the detention to issue the seat belt citation was reasonable or whether some other circumstances justified the continued detention.
 {¶ 21} The record does not contain a clear indication of the length of the traffic stop. However, once Trooper Spriggs decided to issue Jones a citation for the seat belt *Page 8 
violation, it was reasonable for her to detain him to ascertain his identity. See, e.g., State v. Milhouse (1999), 133 Ohio App.3d 527, 530
and State v. Brown, 2nd Dist. No. 20336, 2004-Ohio-4058, at ¶ 20. This is especially true given Trooper Conley's testimony that Jones's lack of identification and the inability to obtain any information through LEADS system raised suspicion as to his true identity. The record makes clear that Officer Timberlake responded to the scene promptly and that the officers acted diligently to learn whether Jones was being truthful as to his identity.
 {¶ 22} Once Officer Timberlake determined that Jones might be "Man-Man," a person who was known to carry weapons, it was reasonable for the officers to order him and Wise from the car and to conduct a protective search. See State v. Isbele (2001), 144 Ohio App.3d 780, 784, citing Maryland v. Wilson (1997), 519 U.S. 408, 414; State v. Bobo
(1988), 37 Ohio St.3d 177, paragraph two of the syllabus and other authority. At that point, Officer Timberlake observed what he believed to be a shirt containing a handgun. Based on these facts, we conclude the continued detention was reasonable and that there is no reasonable possibility that a motion to suppress would have been successful. Jones's first assignment of error is meritless.
 B. Evidentiary Error {¶ 23} In his second assignment of error, Jones argues that he received ineffective assistance of counsel because his trial counsel failed to object to the admissibility of evidence. Specifically, Jones argues his counsel should have objected on hearsay grounds to Trooper Conley's testimony regarding Officer Timberlake's identifying Jones as Man-Man. However, Officer Timberlake testified concerning his own out-of-court statements, thus making Conley's testimony cumulative and harmless *Page 9 
error at best. Thus, even had Jones's counsel objected to Trooper Conley's testimony and had the trial court ordered it stricken, there is no reasonable probability the outcome of the trial would have been different.
 {¶ 24} Jones argues his trial counsel should have objected, again on hearsay grounds, to Officer Timberlake's testimony that, "[b]ased on my intelligence of this gentleman he is supposed to carry guns and sells drugs, if this is the same person." This testimony is not hearsay, as it is Officer Timberlake's in-trial statement, not an out-of-court statement by someone else.
 {¶ 25} He also argues that counsel should have objected to Trooper Spriggs's testimony that Wise told her that Jones asked her to carry the drugs. However, Wise also testified at trial that Jones asked her to carry the drugs. Thus, even had counsel raised this objection, there is no reasonable probability the outcome of the trial would have been different because this evidence came in properly through the declarant, Wise.
 {¶ 26} Jones also contends that his counsel should have objected to testimony regarding a controlled drug buy made at the residence where the white Firebird had been observed.[1] Again, this testimony was based on Officer Timberlake's own knowledge and did not constitute hearsay. Jones argues his counsel should have objected to Officer Timberlake's testimony that a confidential informant approached him and said "I heard you got Man-Man." Had this evidence been excluded, there is no reasonable probability the outcome of the trial would have been different. Given the officer's observation of the tattoo, neither speculation by Timberlake about Jones being *Page 10 
"Man-Man," nor the informant's comments about "getting him," affected the outcome of the trial.
 C. Prosecutorial Misconduct {¶ 27} In his third assignment of error, Jones argues he was denied his right to a fair trial due to remarks made by the prosecutor during closing argument. Specifically, Jones argues the prosecutor improperly commented on his son's high school football career and service in the armed forces and compared that to Jones's behavior; disparaged Jones's credibility; argued Jones was Man-Man and sold drugs at 2111 Eighth Street; argued that Jones's crime was coming from Columbus to Portsmouth to sell drugs to the young people of the community; and asked the jury to be the voice of the community concerning drugs in the community.
 {¶ 28} Prosecutorial misconduct constitutes reversible error only in "rare instances.'" State v. Keenan (1993), 66 Ohio St.3d 402, 405,613 N.E.2d 203, quoting State v. DePew (1988), 38 Ohio St.3d 275, 288, 528
N.E.2d. 542. "The test for prosecutorial misconduct is whether the conduct complained of deprived the defendant of a fair trial." State v.Jackson (2001), 92 Ohio St.3d 436, 441, 751 N.E.2d 946. To find prejudice we must first determine whether the remarks were improper and, if so, whether they prejudiced the defendant's substantial rights.State v. Hartman (2001), 93 Ohio St.3d 274, 295, 754 N.E.2d 1150. To establish prejudice, the defendant must show that a reasonable probability exists that, but for the prosecutor's improper remarks, the result of the proceeding would have been different. We must examine the prosecution's closing argument in its entirety to determine whether the remarks prejudiced the *Page 11 
defendant. State v. Treesh (2001), 90 Ohio St.3d 460, 466,739 N.E.2d 749; State v. Keenan (1993), 66 Ohio St.3d 402, 410, 613 N.E.2d 203.
 {¶ 29} A review of the closing arguments of both parties reveals the prosecutor's reference to his own son was fair comment under UnitedStates v. Robinson (1988), 485 U.S. 25, 108 S.Ct. 864, 99 L.Ed.2d 23. Defense counsel argued that Jones was only doing things a normal teenager does and the prosecutor contrasted Jones's behavior with that of his eighteen-year-old son. Likewise, defense counsel argued Jones had been nothing but honest with the officers. The state countered with arguments it believed demonstrated Jones's dishonesty. Because defense counsel raised these issues in closing argument, the prosecutor was free to respond. We will address the State's references to the other acts evidence concerning drug dealing below.
 D. Carrying a Concealed Weapon {¶ 30} In his fourth assignment of error, Jones argues that he received ineffective assistance of counsel when his trial counsel failed to move for acquittal on the charge of carrying a concealed weapon. A motion for acquittal raises the question whether the evidence is legally sufficient to support the jury verdict as a matter of law. State v.Thompkins (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541. In analyzing the sufficiency of evidence, the court must construe the evidence in a light most favorable to the prosecution. State v. Hill (1996),75 Ohio St.3d 195, 205, 661 N.E.2d 1068. After construing the evidence in this manner, the test for determining sufficiency is whether any rational trier of fact considering the evidence could have found all essential elements of the charged offenses proven beyond a reasonable doubt.State v. Jenks *Page 12 
(1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. Thus, we must determine whether there is a likelihood that, had Jones's counsel moved for acquittal on the charge of carrying a concealed weapon, that motion would have been successful.
 {¶ 31} Jones argues that Trooper Conley and Trooper Spriggs testified Officer Timberlake saw a gun lying on the floorboard, and, thus, that the weapon could not have been concealed. However, Officer Timberlake did not testify that he saw any part of the actual handgun. He testified that he saw a shirt that was shaped such that it appeared to contain a handgun. He did not testify that he saw any part of the handgun itself. Thus, considering this evidence in the light most favorable to the prosecution, we cannot say there was a reasonable probability the motion for acquittal would have been successful. Jones's fourth assignment of error lacks merit.
 E. Cumulative Error {¶ 32} In his final assignment of error, Jones argues the cumulative effect of his trial counsel's errors deprived him of his right to a fair trial. In reviewing this assignment of error, we look to the totality of the evidence before the jury. State v. Gondor, 112 Ohio St.3d 377, 392,2006-Ohio-6679, at ¶ 72. In Stouffer v. Reynolds (C.A. 10, 1999), 168 F.3d 1155, 1163-64, the court stated: "Taken alone, no one instance establishes deficient representation. However, cumulatively, each failure underscores a fundamental lack of formulation and direction in presenting a coherent defense". See, also, Gondor at ¶ 72. Having found no error or lack of prejudice in all of the foregoing arguments, we reject the cumulative argument also.
 F. Other Acts Evidence *Page 13 {¶ 33} We turn now to the evidence concerning Jones's reputation as a drug dealer, which we requested the parties to brief. As a general rule, evidence of prior crimes, wrongs, or bad acts is inadmissible if it is wholly independent of the charge for which an accused is on trial.State v. Marshall, Lawrence App. No. 06CA23, 2007-Ohio-6298, at j|45. Evid. R. 404(B) states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evid. R. 404(B). "`When other acts evidence is relevant for one of those limited purposes, the court may properly admit it, even though the evidence may show or tend to show the commission of another crime by the accused.'" Id. The admissibility of other acts evidence is "carefully limited because of the substantial danger that the jury will convict the defendant solely because it assumes that the defendant has a propensity to commit criminal acts, or deserves punishment regardless of whether he or she committed the crime charged in the indictment." In reSturm, Washington App. No. 05CA35, 2006-Ohio-7101, at ¶ 51, citingState v. Schaim (1992), 65 Ohio St.3d 51, 59, 600 N.E.2d 661, 668. Thus,
 "[e]vidence of other crimes and acts of wrongdoing must be strictly construed against admissibility. [Internal citations omitted.] Such evidence is only admissible if the other act tends to show by substantial proof any of those things enumerated, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." State v. Moore, 7th Dist. No. 02CA152, 2004-Ohio-2320, at ¶ 44. "It is never admissible when its sole purpose is to establish that the defendant committed the act alleged of him in the indictment." Id. However, "the decision to admit Evid. R. 404(B) prior acts evidence rests in the trial court's sound discretion and that decision should not be reversed absent an abuse of discretion." State v. Hairston, Scioto App. No. 06CA3089, 2007-Ohio-3707, at ¶ 38. *Page 14 
Marshall, 2007-Ohio-6298, at j|46.
 {¶ 34} "Evidence of other acts is admissible if (1) there is substantial proof that the alleged other acts were committed by the defendant, and (2) the evidence tends to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." State v. Lowe (1994), 69 Ohio St.3d 527, 530, 634 N.E.2d 616. The Supreme Court of Ohio has suggested that the probative value of the other-acts evidence is related to the quality of the State's proof.State v. Jamison (1990), 49 Ohio St.3d 182, 187, 552 N.E.2d 180 ("In this case, the state established the probative value of the other-acts evidence by the strong quality of its proof. * * * Other-acts evidence need be proved only by substantial proof, not proof beyond a reasonable doubt. Yet, the relative high quality of this other-acts evidence in this case establishes that the prosecution did not attempt to prove one case simply by questionable evidence of other offenses." (Citation omitted.)). We have also recognized that, "[f]or other acts evidence to have probative value, substantial proof must exist that the defendant committed the act." State v. Wright, Washington App. No. 00CA39, 2001-Ohio-2473.
 {¶ 35} In this case, Trooper Conley testified that, prior to arresting Jones, Officer Timberlake was confident that Jones was known by the street name "Man-Man" and that police had purchased narcotics from him a week before the stop. The State argues this other acts evidence was relevant to prove the elements of the trafficking offense and to show preparation, plan, scheme, and modus operandi.
 {¶ 36} The State first contends that the evidence that Jones was a drug dealer named Man-Man proves the elements of drug trafficking. However, "[a]n accused cannot be convicted of one crime by proving he committed other crimes or is a bad *Page 15 
person." State v. Jamison (1990), 49 Ohio St.3d 182, 184,552 N.E.2d 180. "The admissibility of other acts evidence is carefully limited because of the substantial danger that the jury will convict the defendant solely because it assumes that the defendant has a propensity to commit criminal acts, or deserves punishment regardless of whether he or she committed the crime charged in the indictment. This danger is particularly high when the other acts are very similar to the charged offense, or of an inflammatory nature, as is certainly true in this case." State v. Schaim (1992), 65 Ohio St.3d 51, 59, 600 N.E.2d 661
(citation omitted).
 {¶ 37} R.C. 2925.03 defines the offense of drug trafficking:
 (A) No person shall knowingly do any of the following:
 Sell or offer to sell a controlled substance;
 Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, when the offender knows or has reasonable cause to believe that the controlled substance is intended for sale or resale by the offender or another person.
A prior drug sale (that is, one other than the charged offense) is not in itself an element of drug trafficking. Compare State v. Foster, Greene App. No. Civ.A.2004-CA-19, 2005-Ohio-439, at ¶ 86 ("At least one previous Domestic Violence conviction was necessarily going to be laid before the jury, since that was an element of the two felony Domestic Violence offenses with which Foster was currently charged."). The State argues that the prior drug sale addresses the issue whether Jones knew or had reason to know that the drugs were intended for sale or resale. However, that element of the charge was not disputed at trial. SeeState v. Montgomery (1991), Hocking App. No. 89CA15, unreported ("[A]t the time the `other act' testimony was adduced, there was not any issue with respect to identity, mistake or accident in the case. Thus, admissibility was *Page 16 
not proper on those grounds."). Instead, Jones's sole defense was that the drugs were not his. Because the drugs were individually bagged, the State had presented sufficient evidence for the jury to infer that the person who possessed them knew they were intended for sale. In any case, the State never argued at trial that the prior sale was relevant to show that element of drug trafficking. Instead, it appears that the State attempted to convince the jury that Jones was a drug trafficker and possessed the drugs by showing these prior acts. However, prior acts evidence "`is never admissible when its sole purpose is to establish that the defendant committed the act alleged of him in the indictment.'"Marshall, 2007-Ohio-6298, at ¶ 46, quoting State v. Moore, 7th Dist. No. 02CA152, 2004-Ohio-2320, at ¶ 44.
 {¶ 38} Nor does it appear that the prior acts evidence was necessary to demonstrate preparation, plan, scheme, or modus operandi. We have explained that scheme, plan, or system evidence is "`relevant in two general factual situations. First, those situations in which the `other acts' form part of the immediate background of the alleged act which forms the foundation of the crime charged in the indictment. * * * To be admissible pursuant to this sub-category of `scheme, plan or system' evidence, the `other acts' testimony must concern events which are inextricably related to the alleged criminal act. * * * Identity of the perpetrator of a crime is the second factual situation in which 'scheme, plan or system' evidence is admissible.'" Wright, 2001-Ohio-2473, quoting State v. Curry (1975), 43 Ohio St.2d 66, 73, 330 N.E.2d 720. It does not appear that the prior drug deal was part of the immediate background that forms the foundation of the crime charged in this indictment; instead, the prior drug deal was chronologically and factually distinct from the charged crime. *Page 17 
 {¶ 39} The State presented no evidence that the prior sale was in preparation for the later instance of drug trafficking. Given that Jones still allegedly possessed 25 bags of crack, the prior sale does not even show that Jones needed to buy more drugs because he had sold out his supply.
 {¶ 40} The State's argument that the prior act evidence was relevant to show Jones's modus operandi also fails. The Supreme Court of Ohio has held that "[a] certain modus operandi is admissible not because it labels a defendant as a criminal, but because it provides a behavioral fingerprint which, when compared to the behavioral fingerprints associated with the crime in question, can be used to identify the defendant as the perpetrator." Lowe, 69 Ohio St.3d at 531. The mere act of selling drugs does not provide a behavioral fingerprint sufficient to justify admission of prior bad acts evidence; otherwise, any similar crime would be a modus operandi. The record is devoid of any testimony or other evidence showing "`[o]ther acts forming a unique, identifiable plan of criminal activity * * *.'" Id., quoting State v. Smith (1990),49 Ohio St.3d 137, 141, 551 N.E.2d 190.
 {¶ 41} Accordingly, we conclude counsel was deficient for failing to object to the introduction of this other acts evidence and the State's closing argument referencing it.
 {¶ 42} We look now to the question of prejudice. The trial was, in effect, a swearing contest between Wise and Jones. Wise, who was driving Jones's car, was also the one who had physical possession of the drugs. She received a plea bargain in exchange for her testimony against Jones. The record indicates that the only evidence against Jones — besides the testimony that he is a known crack dealer with the street-name Man-Man — consisted of Wise's statements that Jones gave her the drugs, that *Page 18 
they were going to Columbus to "reload," and that she had seen Jones previously sell drugs. Thus, the jury faced a credibility determination; Wise's own lack of credibility and the inconsistencies in her testimony may have been overshadowed by testimony of the police's suspicion that Jones was a drug dealer. First, Wise claimed that she and Jones were going to Columbus to re-supply Jones's cache of drugs. However, although Wise was wearing $11,000 worth of drugs, Jones only had $746 on him. Second, she testified that Jones gave her the drugs at a gas station. However, she told police that Jones had "ordered her once she got stopped to put the drugs and the narcotics under her breast inside her shirt." Third, Wise was an admitted drug addict. Fourth, it does not appear that the police found Jones's fingerprints on any of the drugs, even though he had just given the drugs to Wise; there is no physical evidence linking Jones to the drugs. Therefore, there is no overwhelming evidence of guilt. Given the state of the record, we conclude there is reasonable probability that the outcome of the trial would have been different in the absence of the State's effort to portray Jones as a known drug dealer.
 III. CONCLUSION {¶ 43} Counsel's failure to object to the other acts evidence fell below an objective standard of reasonableness. And it was also prejudicial. Given the lack of direct evidence and the fact that the other acts evidence may have mislead the jury and caused it to overlook the inconsistencies in Wise's testimony, we believe that Jones received ineffective assistance of counsel and is entitled to a new trial.[2]
 JUDGMENT REVERSED AND CAUSE REMANDED. *Page 19 
 JUDGMENT ENTRY
It is ordered that THE JUDGMENT BE REVERSED AND THE CAUSE REMANDED and that the Appellant recover of Appellee costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, P.J. and Kline, J.: Concur in Judgment and Opinion.
[1] We address other concerns about this testimony below.
[2] Had we analyzed the other acts evidence under a plain error standard as we initially indicated, our decision would be the same. *Page 1