[Cite as *State v. Holdren*, 2021-Ohio-810.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PICKAWAY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | Case No. 20CA3 |
| Plaintiff-Appellee, | : | |
| | : | |
| v. | : | <u>DECISION AND JUDGMENT</u> |
| | : | <u>ENTRY</u> |
| JEREMIAH J. HOLDREN, | : | |
| AKA: JEREMIAH J. HOLDEN | : | |
| AKA: MATTHEW HOLDREN | : | **RELEASED: 03/15/2021** |
| | : | |
| Defendant-Appellant. | : | |

_____
<u>APPEARANCES:</u>

Judy C. Wolford, Pickaway County Prosecuting Attorney, and Jayme Hartley Fountain, Assistant Pickaway County Prosecutor, Circleville, Ohio, for Appellee.

Jerry L. McHenry, Pickerington, Ohio, for Appellant.
_____

Wilkin, J.

{¶1} This is an appeal from a Pickaway County Common Pleas Court judgment of conviction in which a jury found Appellant, Jeremiah J. Holdren, guilty of aggravated trafficking in drugs. The trial court sentenced Holdren to 36 months in prison. Holdren challenges his conviction and presents three assignments of error: (1) the trial court committed plain error by allowing co-defendant Thomas Green to testify as to Holdren's statements, (2) the conviction is against the manifest weight and sufficiency of the evidence, and (3) Holdren's trial counsel was ineffective for failing to object to Green's testimony.

{¶2} We affirm the trial court's judgment of conviction finding no error in admitting Holdren's statements since he is a party-opponent. Second, we

determine the jury could reasonably have found all elements of the offense and it did not lose its way in finding Holdren guilty of aggravated trafficking in drugs. Finally, we conclude that counsel's failure to object to properly admitted evidence does not render counsel ineffective.

FACTS AND PROCEDURAL BACKGROUND

{¶3} On the afternoon of August 26, 2019, Corporal Steven Harger was on patrol with his canine officer when they encountered Holdren.  Holdren drove past Corporal Harger who noticed two passengers in the vehicle.  Corporal Harger turned around and began following Holdren.  As soon as he did, Holdren made a quick lane change without signaling.  After the lane change, Corporal Harger drove past Holdren's vehicle.  Holdren then went around the corporal's cruiser and crossed over the center line with both tires.  At that point, Corporal Harger activated his emergency lights and initiated a traffic stop.

{¶4} Holdren complied and stopped his vehicle.  After stopping, Holdren quickly exited the vehicle.  Corporal Harger instructed Holdren to get back in the vehicle.  Corporal Harger approached Holdren as he was instructing him to return inside the vehicle and noticed that Holdren was "very nervous" and "visibly shaken."  He also observed Thomas Green in the front passenger seat and Ashley Taulbee in the rear passenger seat.  Based on Holdren's behavior, the corporal's belief that the two passengers were under the influence, and for his and the canine officer's safety, Corporal Harger requested back-up.  Before back-up arrived, Corporal Harger placed Holdren in the back of his cruiser and left the two passengers in the vehicle.

{¶5} Deputy Joseph Hugus arrived within 10 minutes of the back-up request and within 20 minutes of the traffic stop.  Corporal Harger and Deputy Hugus secured the two passengers by placing Holdren and Green in Deputy Hugus' cruiser and Taulbee in Corporal Harger's cruiser since it only seats one person.  This is when the canine officer was deployed to conduct a free air sniff of the vehicle.  The canine officer alerted to the presence of drugs from the driver and rear passenger areas.

{¶6} Deputy Hugus searched the driver side while Corporal Harger searched the front passenger seat.  As soon as Deputy Hugus opened the door, he saw something tucked between the driver and passenger seats.  When Deputy Hugus leaned in, he realized it was a large clear plastic bag with a crystal-like substance.  The bag was tucked behind the driver's seatbelt buckle. Corporal Harger identified the substance as methamphetamine.

{¶7} By the glove box, Corporal Harger and Deputy Hugus discovered a black bag containing syringes, tourniquets (used to block the blood supply to the arm/vein) and several individual baggies with residue inside of them.  In the trunk of the vehicle they discovered a Ziploc baggie with a white substance also identified as methamphetamine.  The total methamphetamine weight from both bags—the one located by the driver's seatbelt and the one from the trunk—was 11.74 grams.

{¶8} Based on the contraband found in the vehicle, Holdren was indicted for committing aggravated possession of drugs and aggravated trafficking in drugs both as second-degree felonies.  Holdren pled not guilty and the matter

proceeded to a one-day jury trial but with the offenses amended as third-degree felonies.  Green was also charged but pled guilty to aggravated trafficking in drugs as a third-degree felony with the agreement that the state would recommend community control sanctions as his sentence.  In exchange for the state's community control sentence recommendation, Green testified for the state at Holdren's trial.

{¶9} Green and Holdren have known each other for approximately 30 years.  A couple of weeks prior to August 26, Green began staying with Holdren, and, on that day, Holdren agreed to drive Green and Taulbee to Columbus to get heroin.  As planned, when they arrived to Columbus, Taulbee procured the heroin and both she and Green got high in the back seat of the vehicle while it was parked.  After getting high, Green fell asleep but was awakened by Holdren asking him for money.  Green did not have any money to give Holdren and after responding to Holdren's request, he fell back asleep.  Green was again awakened by Holdren asking him to drive but Green was in no condition to drive. Green then moved to the front passenger seat.  Once again, Green fell asleep and was awakened this time by Corporal Harger's emergency lights.

{¶10} Green testified that right as Holdren was pulling over to stop, Holdren asked him "[h]ey, are you going to stuff this?"  Green explained that the term stuffing means to insert drugs in your buttocks area.  Green did not stuff any drugs.  Holdren then parked the vehicle and jumped out.  Green recalls Holdren interacting with Corporal Harger and then both he and Holdren being placed in the same cruiser.  While inside the cruiser, Holdren told Green he "better take the

charge or me and him were going to have problems." After Green's testimony, the state rested and Holdren did not present any evidence.

{¶11} The jury deliberated a little over an hour before returning guilty verdicts as to both offenses including the finding that the weight of methamphetamine was greater than a bulk amount but less than five times the bulk amount. At sentencing, the state agreed that the two offenses merge and requested a sentence for the aggravated trafficking in drugs conviction. The trial court then sentenced Holdren to 36 months in prison.

ASSIGNMENTS OF ERROR

I.      THE TRIAL COURT ERRED BY PERMITTING THE
        INTRODUCTION OF HEARSAY EVIDENCE AGAINST
        APPELLANT. THIS CONSTITUTED A DENIAL OF
        APPELLANT'S RIGHTS TO A FAIR TRIAL, CONFRONTATION
        OF WITNESSES, REPRESENTATION OF COUNSEL AND DUE
        PROCESS OF LAW AS GUARANTEED HIM BY THE FIFTH,
        SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS OF THE
        UNITED STATES CONSTITUTION AND ARTICLE I, SECTION
        10 OF THE OHIO CONSTITUTION. THOMAS GREEN
        TESTIFIED AS TO THINGS APPELLANT PURPORTEDLY SAID
        TO HIM. THESE WORDS WERE INDICIA OF GUILT.

II.     THE APPELLANT'S CONVICTION WAS AGAINST THE
        MANIFEST WEIGHT OF THE EVIDENCE AND WAS NOT
        SUPPORTED BY SUFFICIENT EVIDENCE. HE WAS DENIED
        HIS RIGHTS TO A FAIR TRIAL, DUE PROCESS OF LAW AND
        EQUAL PROTECTION OF THE LAW AS GUARANTEED HIM BY
        THE FIFTH, EIGHTH AND FOURTEENTH AMENDEMENTS OF
        THE UNITED STATES CONSTITUTION AND ARTICLE I,
        SECTION 10, OF THE OHIO CONSTITUTION.

III.    TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF
        COUNSEL TO APPELLANT BY FAILING TO RAISE
        OBJECTIONS TO THE HEARSAY EVIDENCE CONTAINED IN
        THOMAS GREEN'S TESTIMONY. THIS WAS A DENIAL OF
        APPELLANT'S RIGHT TO COUNSEL, A FAIR TRIAL, DUE
        PROCESS OF LAW AND EQUAL PROTECTION OF THE LAW
        AS GUARANTEED HIM BY THE FIFTH, SIXTH AND

FOURTEENTH AMENDMENTS OF THE UNITED STATES
CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO
CONSTITUTION.

ASSIGNMENT OF ERROR I

**{¶12}** Holdren presents several conclusionary one-sentence arguments within the first assignment of error.  First, Holdren argues the trial court erred in allowing the state's witness Thomas Green to testify as to Holdren's statements at the traffic stop because they are hearsay.  According to Holdren, this error violated his right to confront Green because he could not dispute the statements without compromising his right against self-incrimination.  Additionally, Holdren claims he was denied a fair trial since the statements were highly prejudicial— indicia of guilt.  In response, the state cites Evid.R. 801(D)(2) that defines Holdren's statements as not hearsay because he is a party-opponent.

**{¶13}** We begin our analysis with determining the appropriate standard of review.  Holdren concedes that he did not object to Green's testimony at trial. Consequently, "we may review this forfeited issue only for plain error."  *State v. Dailey*, 4th Dist. Adams No. 18CA2059, 2018-Ohio-4315, ¶ 17; *see also State v. Stapleton*, 4th Dist. Pickaway No. 19CA7, 2020-Ohio-4479, ¶ 14 ("Appellate courts nevertheless have discretion to consider forfeited issues under a plain error analysis.")

**{¶14}** "[N]otice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."  *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.  To demonstrate plain error, Holdren "must show

that an error occurred, that the error was plain, and that the error affected his substantial rights." *State v. Wilks*, 154 Ohio St.3d 359, 2018-Ohio-1562, 114 N.E.3d 1092, ¶ 52, citing *State v. Barnes*, 94 Ohio St.3d 21, 27, 2002-Ohio-68, 759 N.E.2d 1240. The term affected "substantial right" has been interpreted as affecting the outcome of the case. *Barnes* at 27.

{¶15} Green testified at trial that during the traffic stop Holdren asked him if he would "stuff" the drugs and also warned Green he "better take the charge" or they were going to have problems. Holdren argues the admission of these statements was erroneous because they are hearsay. Ordinarily, hearsay "is not admissible except as otherwise provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio." Evid.R. 802.

{¶16} "Hearsay" is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). But Evid.R. 801(D)(2)(a) provides that a "statement is not hearsay if * * * [t]he statement is offered against a party and is (a) the party's own statement, in either an individual or a representative capacity." The Supreme Court of Ohio held that a "defendant's own out-of-court statements, offered against him at trial, are not hearsay." *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 112, citing Evid.R. 801(D)(2)(a); *see also State v. Tyler*, 4th Dist. Ross No. 10CA3183, 2011-Ohio-

3937, ¶ 36 ("Tyler's statements in the recording are admissions and are, by definition, not hearsay.")

**{¶17}** Based on the clear definition in Evid.R. 801(D)(2)(a) and established caselaw, Holdren's statements are not hearsay.  The statements are admissions by a party-opponent.  Subsequently, Holdren's Confrontation Clause argument fails.  "If testimony qualifies as nonhearsay, it does not implicate the Confrontation Clause."   *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 186, citing *Crawford v. Washington*, 541 U.S. 36, 59, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), fn. 9, citing *Tennessee v. Street*, 471 U.S. 409, 414, 105 S.Ct. 2078, 85 L.Ed.2d 425 (1985).

**{¶18}** Therefore, we find the trial court did not commit plain error by allowing Green's testimony as to Holdren's statements.  Having rejected Holdren's arguments, we overrule his first assignment of error.

## ASSIGNMENT OF ERROR II

**{¶19}** In his second assignment of error, Holdren challenges his aggravated trafficking in drugs conviction on the basis that the methamphetamine was not his.  Holdren emphasizes he was not the owner of the vehicle and Green and Taulbee were passengers and were left alone in the vehicle when Corporal Harger placed Holdren in his cruiser.  Finally, Holdren calls attention to Green's testimony that he did not observe Holdren purchase any methamphetamine on August 26.

**{¶20}** In response, the state underscores Holdren's demeanor at the traffic stop and conduct of exiting the vehicle as soon as he stopped.  The state also

highlights the location of one of the methamphetamine bags near the driver's seatbelt buckle and Green's testimony that the drugs were not his.

{¶21} "When a court reviews a record for sufficiency, '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d 930, ¶ 146, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus; *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

{¶22} In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Const. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus.

{¶23} "Although a court of appeals may determine that a judgment is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence." *Thompkins* at 387. But the

weight and credibility of evidence are to be determined by the trier of fact. *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, 15 N.E.3d 818, ¶ 132. The trier of fact is free to believe all, part, or none of the testimony of any witness, and we defer to the trier of fact on evidentiary weight and credibility issues because it is in the best position to gauge the witnesses' demeanor, gestures, and voice inflections, and to use these observations to weigh their credibility. *State v. Dillard*, 4th Dist. Meigs No. 13CA9, 2014-Ohio-4974, ¶ 28, citing *State v. West*, 4th Dist. Scioto No. 12CA3507, 2014-Ohio-1941, ¶ 23.

{¶24} Holdren was convicted of aggravated trafficking in drugs in violation of R.C. 2925.03(A)(2) as a third-degree felony based on the amount of methamphetamine—equals or exceeds bulk amount but less than five times the bulk amount, R.C. 2925.03(C)(1)(c). To be convicted of aggravated trafficking in drugs the state has the burden to prove per R.C. 2925.03(A)(2) that Holdren did knowingly

> prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person.

The mens rea "knowingly" is defined in R.C. 2901.22(A) as:

> A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

{¶25} "Possess" or "possession" is defined in R.C. 2925.01(K) as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." Possession may be actual or constructive. *State v. Butler*, 42 Ohio St.3d 174, 175, 538 N.E.2d 98 (1989). "Actual possession exists when the circumstances indicate that an individual has or had an item within his immediate physical possession." *State v. Fry*, 4th Dist. Jackson No. 03CA26, 2004-Ohio-5747, ¶ 39. "Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession." *State v. Hankerson*, 70 Ohio St.2d 87, 434 N.E.2d 1362 (1982), syllabus. "Dominion and control may be established by circumstantial evidence alone." *Fry* at ¶ 39, citing *State v. Taylor*, 78 Ohio St.3d 15, 676 N.E.2d 82 (1997); *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991).

{¶26} "A defendant's mere presence in an area where drugs are located is insufficient to demonstrate that the defendant constructively possessed the drugs." *Fry* at ¶ 40, citing *State v. Cola*, 77 Ohio App.3d 448, 450, 602 N.E.2d 730 (11th Dist.1991). However, "when one is the driver of a car in which drugs are within easy access of the driver, constructive possession may be established." *Id.* at ¶ 41.

{¶27} We find based on Holdren's behavior at the traffic stop and the location of the methamphetamine, syringes and individual baggies with residue, the state established his constructive possession of the drugs with the intent to

distribute.  Holdren exited the vehicle as soon as he stopped and was nervous and shaken.  Even though Holdren was not the owner of the vehicle, the vehicle belonged to his girlfriend and he was the driver on August 26.  Thus, Holdren had access and control to all compartments in the vehicle.

{¶28} One of the clear plastic bags containing methamphetamine was tucked behind the driver's seatbelt buckle.  The second bag containing methamphetamine was located in the trunk of the vehicle.  In addition, Corporal Harger and Deputy Hugus located a black bag by the glove box that had several individual baggies with residue, syringes and tourniquets.  Deputy Hugus testified that the little baggies indicate trafficking—intent to sell.  Although Green testified that he did not see anyone buy methamphetamine on August 26, he knew Holdren was going to buy methamphetamine "at some time that day."  Additionally, prior to the traffic stop on August 26, Green saw a male in the car known to him as an individual Holdren purchased methamphetamine from in the past.

{¶29} Finally, Corporal Harger and Green's testimonies negate Holdren's claim that the drugs belonged to Green and/or Taulbee.  When Corporal Harger left Green and Taulbee alone in the vehicle, he kept an eye on them and neither Green nor Taulbee made any movement inside the vehicle.  In addition, Green stated that his drug of choice is heroin and it puts him down—to sleep.  Green rarely uses methamphetamine but when he does, it brings him up—keeps him awake for days. On August 26, Green kept falling asleep.

**{¶30}** Accordingly, viewing the evidence in a light most favorable to the state, the jury could reasonably have found all the elements of the offense and it did not lose its way finding Holdren guilty of aggravated trafficking in drugs. Therefore, we overrule Holdren's second assignment of error.

## ASSIGNMENT OF ERROR III

**{¶31}** In his third assignment of error, Holdren argues his trial counsel was ineffective for failing to object to Green's testimony when Green was recounting his statements at the traffic stop. Holdren reiterates his argument in the first assignment of error that the statements are hearsay. In response, the state cites Evid.R. 801(D)(2) in support of its argument that Holdren's statements were admissible and are by definition not hearsay.

**{¶32}** To demonstrate ineffective assistance of counsel, Holdren "must show (1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that, but for counsel's errors, the proceeding's result would have been different." *State v. Short*, 129 Ohio St.3d 360, 2011-Ohio-3641, 952 N.E.2d 1121, ¶ 113, citing *Strickland v. Washington*, 466 U.S. 668, 687-688, 694 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Failure to demonstrate either prong of this test "is fatal to the claim." *State v. Jones,* 4th Dist. Scioto No. 06CA3116, 2008-Ohio-968, ¶ 14, citing *Strickland*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674.

**{¶33}** Holdren "has the burden of proof because in Ohio, a properly licensed attorney is presumed competent." *State v. Gondor*, 112 Ohio St.3d 377,

2006-Ohio-6679, 860 N.E.2d 77, ¶ 62, citing *State v. Calhoun*, 86 Ohio St.3d 279, 289, 714 N.E.2d 905 (1999), citing *Vaughn v. Maxwell*, 2 Ohio St.2d 299, 209 N.E.2d 164 (1965). "In order to overcome this presumption, the petitioner must submit sufficient operative facts or evidentiary documents that demonstrate that the petitioner was prejudiced by the ineffective assistance." *Id.*, citing *State v. Davis*, 133 Ohio App.3d 511, 728 N.E.2d 1111 (8th Dist.1999). To demonstrate prejudice, Holdren "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland* at 694.

**{¶34}** In overruling Holdren's first assignment of error, we determined that his statements by definition are not hearsay and so the trial court did not commit plain error by admitting Green's testimony. Accordingly, Holdren cannot demonstrate that had counsel objected to the testimony the trial court would have sustained the objection.

**{¶35}** Therefore, we overrule Holdren's third assignment of error.

CONCLUSION

**{¶36}** Having overruled Holdren's three assignments of error, we affirm the trial court's judgment entry of conviction.

**JUDGMENT AFFIRMED**

## <u>JUDGMENT ENTRY</u>

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Pickaway County Common Pleas Court to carry this judgment into execution.

<u>IF</u> A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty-day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. and Hess, J.:  Concur in Judgment and Opinion.

For the Court,


BY: _____
    Kristy S. Wilkin, Judge

### NOTICE TO COUNSEL
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**