DECISION AND JUDGMENT ENTRY
{¶ 1} A Ross County jury convicted Jason Kinney of one count of domestic violence, a third-degree felony because of Kinney's three prior convictions for domestic violence. The charge stemmed from an incident in which Kinney struck his 66-year-old mother after an argument over money. Kinney testified that he struck his mother in self-defense after she hit him with a stick, while his mother testified that Kinney struck her first. Kinney also testified that he did not mean to injure his mother when he struck her, explaining that he only meant to "smack [her] glasses off."
 {¶ 2} First, Kinney argues his trial counsel was ineffective for failing to object to the prosecution's argument that Kinney's prior domestic-violence convictions showed that Kinney intended to harm his mother when he struck her. Because the convictions were admissible to prove the absence of an accident following Kinney's testimony that *Page 2 
he did not mean to hurt his mother when he "smack[ed her] glasses off," his trial counsel was not ineffective in failing to object to the prosecutor's closing remarks.
 {¶ 3} Second, Kinney argues his trial counsel was deficient in failing to request a limiting instruction informing the jury it could not consider Kinney's prior convictions as evidence he has a propensity for violence. Alternatively, Kinney argues the trial court committed plain error in failing to sua sponte give this limiting instruction. However, debatable trial tactics do not constitute the ineffective assistance of counsel or plain error, and a competent attorney could reasonably choose not to seek a limiting instruction as a matter of trial strategy in order not to highlight his prior convictions. Finding no reversible error below, we affirm.
 I. Facts {¶ 4} One evening 44-year-old Jason Kinney returned home to his mother's house from a cookout. He had been drinking with friends and had made plans with them "to paint the town a little bit." Kinney testified that he would be starting at Samuel Stephen College the next week, and he was "fairly intoxicated." Kinney asked his mother, 66-year-old Talissa Kinney, for some money so that he could go out with his friends, but his mother refused.
 {¶ 5} Kinney's mother testified that, after she refused to give him money, "[Kinney] got kind of mad about it. Then I think he pushed me and then that's when he hit me in the face several times * * *." She testified that he hit her in the face with a closed fist, giving her a black eye. Kinney's mother admitted being angry herself and hitting Kinney with a stick, but she explained that she only hit him after he hit her with his fist. *Page 3 
 {¶ 6} Kinney testified on his own behalf. He explained that his mother got upset when he asked her to borrow money. He stated that he pestered her for the money and that they argued. Kinney testified that, "[a]fter a few choice words that I'm not proud of and I'm sure she wasn't either, I recall being struck over the left eye temple with a brown stick that's normally * * * used to seal the window * * * as an extra lock * * *." Feeling dazed and surprised, Kinney testified that he believed "[i]t was a possibility" that his mother would strike him again. Kinney explained what happened next:
 A. The next, as I recall, is not punching, but smacking my mother's glasses off.
 Q. All right. Did you intend to harm your mother when you did this?
 A. Certainly not. Certainly not.
 Q. When you did knock her glasses off, was it the kind of blow that you believe would cause her physical harm, injury?
 A. No sir.
 {¶ 7} On cross-examination, Kinney admitted that he had no reason to fear his mother under normal circumstances, that she walked with the assistance of a walker, and that he could have easily run away from his mother rather than fighting with her. He also admitted writing his mother from jail, apologizing to her, and asking her to drop the charges. The State offered a redacted version of the letter into evidence. In the letter, Kinney told his mother that if she wrote a letter to the prosecutor saying she hit him with the stick first, the prosecutor would drop the charges. Finally, the State offered pictures of Kinney's mother taken the day after the incident by Officer Pete Shaw of the Chillicothe Police Department. These pictures showed his mother with a black eye. *Page 4 
 {¶ 8} The jury convicted Kinney of one count of domestic violence, a violation of R.C. 2919.25(A). Because the jury found that he had three prior convictions for domestic violence, his offense was a third-degree felony under R.C. 2919.25(D)(4). Kinney filed this appeal.
 II. Assignments of Error {¶ 9} Kinney presents two assignments of error:
 1. "Mr. Kinney was denied his Sixth Amendment right to the effective assistance of counsel when trial counsel failed to object to improper remarks made by the prosecutor during closing argument regarding Mr. Kinney's prior convictions and failed to ask the court for a limiting instruction regarding those convictions."
 2. "The trial court erred to Mr. Kinney's prejudice and denied him a fair trial by failing to provide a limiting instruction regarding the admission of Mr. Kinney's prior convictions."
 III. Failure to Object to Other Acts Evidence {¶ 10} In his first assignment of error, Kinney argues that his trial counsel was constitutionally deficient in failing to object to the prosecution's closing remarks, which showed he had a propensity to commit domestic violence based upon his prior convictions. In his brief, Kinney relies on the following excerpt from the prosecutor's closing argument:
 He said he didn't mean to hurt her. [`]I didn't intend to cause any harm['], but look — the judge will also tell you that you can't look into the mind of another. You can only infer their intent or their purpose or their knowledge from the facts and circumstances of the case, and certainly we know the state of mind he was in at the time. We know he was angry and upset with his mother because she wouldn't give him more money to go out drinking. We also know that he has three prior convictions for domestic violence. All three of those convictions were for domestic violence against the same person, his mother. He has a history of striking his mother. He got on the stand and admitted to that. How was his intent different than it is now? . . He's a convicted felon, convicted for harming his mother. *Page 5 
(Alterations and italics in Kinney's brief). The State argues that Kinney's prior convictions were admissible to prove intent and absence of accident.
 {¶ 11} To obtain the reversal of a conviction on grounds of ineffective assistance of counsel, an appellant must show (1) his counsel's performance was deficient, and (2) such deficient performance prejudiced the defense so as to deprive him of a fair trial.Strickland v. Washington (1984), 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L.Ed.2d 674; State v. Drummond, 111 Ohio St.3d 14, 2006-Ohio-5084,854 N.E.2d 1038, at ¶ 205; State v. Issa (2001), 93 Ohio St.3d 49, 67,752 N.E.2d 904.
 {¶ 12} In order to show deficient performance, an appellant must show that trial counsel's performance fell below an objective level of reasonable representation. State v. Conway, 109 Ohio St.3d 412,2006-Ohio-2815, 848 N.E.2d 810, at ¶ 95. To demonstrate prejudice, an appellant must show a reasonable probability exists that, but for the alleged errors, the result of the proceeding would have been different.Conway at ¶ 95; State v. White (1998), 82 Ohio St.3d 16, 23,693 N.E.2d 772; State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, at paragraph three of the syllabus. The appellant has the burden of proof on the issue of counsel's ineffectiveness because, in Ohio, a properly licensed attorney is presumed competent. State v. Gondor,112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, at ¶ 62; State v. Lott (1990),51 Ohio St.3d 160, 175, 555 N.E.2d 293.
 {¶ 13} We have previously explained that other acts evidence is never admissible when its sole purpose is to establish that the defendant committed the act alleged of him in the indictment. State v. Dyer, Scioto App. No. 07CA3163, 2008-Ohio-2711, at ¶ 42; State v. Jones, Scioto App. 06CA3116, 2008-Ohio-968, at ¶ 33. The admissibility of *Page 6 
other acts evidence is "carefully limited because of the substantial danger that the jury will convict the defendant solely because it assumes that the defendant has a propensity to commit criminal acts, or deserves punishment regardless of whether he or she committed the crime charged in the indictment." In re Sturm, Washington App. No. 05CA35,2006-Ohio-7101, at ¶ 51, citing State v. Schaim (1992),65 Ohio St.3d 51, 59, 600 N.E.2d 661, 668. However, "`[e]vidence of other acts is admissible if (1) there is substantial proof that the alleged other acts were committed by the defendant, and (2) the evidence tends to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.'" Jones at ¶ 34, quoting State v.Lowe (1994), 69 Ohio St.3d 527, 530, 634 N.E.2d 616.
 {¶ 14} R.C. 2919.25(A) provides that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). Here, Kinney testified that he did not intend to cause his mother any harm when he "smack[ed her] glasses off" and that he did not believe that knocking her glasses off was "the kind of blow" that would cause his mother any physical injury. On cross-examination, Kinney admitted striking his mother. Kinney did not deny causing his mother harm, but instead claimed that any harm was accidental and not knowingly caused. However, Kinney admitted that "this isn't the first time this kind of thing has happened between [Kinney] and [his] mother[,]" and he admitted assaulting her on prior occasions. The State presented evidence of his 2003, 2004, and 2005 convictions for domestic violence against his mother. We believe that this evidence was relevant to show the absence of *Page 7 
mistake or accident as well as Kinney's knowledge that his conduct would probably cause physical harm to his mother. See State v. Simbro (May 18, 1998), Washington App. No. 97CA0939, 1998 WL 267912, at * 3 ("We find that acts establishing motive, intent, and absence of mistake or accident are relevant to proving domestic violence."); see, also,State v. Carter, Columbiana App. no. 2000-CO-32, 2001-Ohio-3312, at * 1-2 (holding that the trial court did not abuse its discretion in allowing evidence of prior acts of domestic violence where the defendant claimed that he hit his girlfriend by accident); State v. Grubb (1996),111 Ohio App.3d 277, 282, 675 N.E.2d 1353 ("[I]n this case defendant not only asserted a claim of self-defense but his testimony also raised an issue regarding whether his wife's injuries were `accidental' and not the result of any intentional (or knowing) conduct on his part. To that extent `intent' and `lack of accident,' two matters specifically identified in Evid. R. 404(B), were in issue in this case. Accordingly, the state was entitled to utilize the evidence regarding defendant's assaults on his former wife pursuant to Evid. R. 404(B) not for the purpose of showing that on this occasion defendant acted in conformity with that character, but to prove his intent (culpable mental state) and the lack of accident, in this case.")
 {¶ 15} The three prior convictions were also admissible to prove the degree of the domestic violence offense, and Kinney's prior felony conviction was admissible to impeach his credibility as a witness, as Kinney concedes. See Evid. R. 609(A)(2) (providing that certain convictions may be used to impeach the accused's credibility as a witness); State v. Brooke, 113 Ohio St.3d 199, 2007-Ohio-1533,863 N.E.2d 1024, at ¶ 8 ("When existence of a prior conviction does not simply enhance the penalty but transforms the crime itself by increasing its degree, the prior conviction is an essential *Page 8 
element of the crime and must be proved by the state."); State v.Smith (1990), 49 Ohio St.3d 137, 139-40, 551 N.E.2d 190 ("[E]vidence of other acts is admissible if the evidence tends to prove a specific element of the crime charged or one of the matters specifically enumerated in the statute."). Because evidence of Kinney's prior acts of domestic violence against his mother was admissible to prove that injuring his mother was not an accident, to prove his prior convictions as an element of the offense, and to impeach his credibility as a witness, and because the prosecutor directed his reference to Kinney's prior convictions only toward those ends, we cannot say that his trial counsel's performance was ineffective for failing to raise an objection to the prosecutor's closing remarks.
 {¶ 16} Accordingly, we overrule this part of his first assignment of error.
 IV. Limiting Instruction {¶ 17} In his first assignment of error, Kinney also argues that his trial counsel was ineffective for failing to request a limiting instruction informing the jury that it could only use his prior convictions to prove that he had two or more prior convictions, an element of the crime, and to impeach his credibility as a witness. In order for Kinney to demonstrate that he received ineffective assistance of counsel, Kinney must show that his trial counsel's performance was deficient and that this deficient performance prejudiced his case.Strickland, 466 U.S. at 687; Drummond at ¶ 205; Issa,93 Ohio St.3d at 67.
 {¶ 18} In his second assignment of error, Kinney contends that the trial court committed plain error in failing to provide this limiting instruction sua sponte. Kinney acknowledges that he failed to request this instruction at trial and that he has forfeited *Page 9 
all but plain error. We may notice plain errors or defects affecting substantial rights despite the appellant's failure to bring them to the attention of the trial court. Crim. R. 52(B). For there to be plain error, there must be a plain or obvious error that "affect[s] `substantial rights,' which the court has interpreted to mean `but for the error, the outcome of the trial clearly would have been otherwise.'"State v. Litreal, 170 Ohio App.3d 670, 2006-Ohio-5416, 868 N.E.2d 1018, at ¶ 11, quoting State v. Barnes, 94 Ohio St.3d 21, 27, 2002-Ohio-68,759 N.E.2d 1240. We take notice of plain error with the utmost of caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. State v. Gardner, 118 Ohio St.3d 420,2008-Ohio-2787, 889 N.E.2d 995, at ¶ 78; State v. Patterson, Washington App. No. 05CA16, 2006-Ohio-1902, at ¶ 13.
 {¶ 19} When considering whether counsel's representation amounts to deficient performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. "[T]he defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. For this reason, "[appellate courts] will ordinarily refrain from second-guessing strategic decisions counsel make at trial, even where counsel's trial strategy was questionable." State v. Myers, 97 Ohio St.3d 335,2002-Ohio-6658, 780 N.E.2d 186, at ¶ 152; see, also, State v.Conway, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, at ¶ 111 ("[Debatable trial tactics do not constitute ineffective assistance of trial counsel."). Accordingly, in reviewing Kinney's ineffective assistance of counsel claim, we must indulge the strong presumption that his trial counsel followed a reasonable trial strategy *Page 10 
when he failed to request a limiting instruction on the proper consideration of other acts evidence. State v. Thacker, Lawrence App. No. 04CA18, 2005-Ohio-1227, at ¶ 29.
 {¶ 20} We conclude that Kinney has not rebutted the presumption that his attorney provided him with adequate representation. Failing to request the limiting instruction in this case could have been a matter of trial strategy. A competent attorney could have viewed such an instruction as overly emphasizing the various ways that the jury could properly rely on his prior convictions: to prove the degree of the domestic violence offense, to impeach Kinney's credibility as a witness, and to prove Kinney did not accidentally hit his mother. Kinney's attorney may have reasonably preferred not to have the trial judge highlight these proper uses of his prior convictions, and he could reasonably conclude that the limiting instruction would do more harm than good. See Thacker at ¶ 29 ("Here, trial counsel may have believed that an objection to Mr. Edwards's testimony [regarding the defendant's prior criminal conduct] or a request for a limiting instruction would have unduly focused the jury's attention on this information."); see, also, State v. Jovanovic, Cuyahoga App. No. 89180, 2007-Ohio-6196, at ¶ 30 (holding that the failure to request a limiting instruction is a reasonable trial strategy and not the ineffective assistance of counsel, where requesting the instruction could bring undue attention to the objectionable testimony); State v. Jones, Montgomery App. No. 20349,2005-Ohio-1208, at ¶ 23 ("Counsel's decision not to request a limiting instruction may have been a strategic decision in order to avoid drawing further attention to Jones' criminal history."); State v. Rawls, Franklin App. No. 03AP-41, 2004-Ohio-836, at ¶ 42 ("[T]here could have been a tactical reason for his trial counsel to not request an instruction on other acts evidence. For example, trial counsel may have *Page 11 
wanted to avoid drawing additional attention to the other acts testimony. Based on the foregoing, we conclude that defendant's trial counsel's performance was not deficient."). For this reason, we cannot conclude that Kinney's trial counsel's performance was not deficient.
 {¶ 21} We look now to Kinney's claim that the trial court's failure to sua sponte give a limiting instruction amounts to plain error. The Supreme Court of Ohio has previously expressed its reluctance to impose a duty on the trial court to sua sponte issue a limiting instruction in response to the admission of other acts evidence. In State v.Schaim (1992), 65 Ohio St.3d 51, 61 n. 9, 600 N.E.2d 661, the court explained:
 The defendant * * * claims that it was plain error for the trial court to fail to give a limiting instruction on the use of other acts evidence, even though it was not requested by the attorney. We decline to adopt this position, as the decision not to request a limiting instruction is sometimes a tactical one, and we do not wish to impose a duty on the trial courts to read this instruction when it is not requested.
In State v. Evans, Scioto App. No. 05CA3002, 2006-Ohio-2564, at ¶¶ 69-70, we followed this reasoning and declined to find plain error where the trial failed to sua sponte issue such a limiting instruction. Because the failure to request the instruction here could have been part of a reasonable trial strategy, we conclude that the trial court committed no error at all in failing to give the limiting instruction. Accordingly, we overrule Kinney's assignments of error.
 JUDGMENT AFFIRMED. *Page 12 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Ross County Court of Common Pleas to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
 Abele, P.J. McFarland, J.: Concur in Judgment and Opinion. *Page 1