[Cite as *State v. Bankston*, 2011-Ohio-6486.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 24192 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 2010-CR-706 |
| v. | : | |
| | : | |
| MILTON BANKSTON | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

## O P I N I O N

Rendered on the 16th day of December, 2011.

. . . . . . . . .

MATHIAS H. HECK, JR., by R. LYNN NOTHSTINE, Atty. Reg. #0061560, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
    Attorneys for Plaintiff-Appellee

RICHARD D. DONENFELD, Atty. Reg. #24192, 120 West Second Street, Suite 2000, Dayton, Ohio 45402
    Attorney for Defendant-Appellant

. . . . . . . . .

HALL, J.

{¶ 1}    Milton Bankston appeals his conviction, after a jury trial, of domestic violence against Inez Coles, in violation of R.C. 2919.25(A), with a prior conviction for domestic violence. The key assignments of error concern the state's playing of two audio recordings of

telephone conversations that Bankston had from jail with, respectively, his mother and the victim. For the reasons that follow, we reverse the conviction and remand to the trial court.

**{¶ 2}** Bankston and Coles have known each other for ten years. Bankston is the father of Coles's one-year-old daughter. On March 7, 2010, Coles and Bankston were at the home of Bankston's mother, Sharon Maston, when Coles was called into work. Coles testified that as she walked to her car, Bankston told her that she could not use the car because she had not paid him for the new battery he recently purchased for it. Coles decided to catch the bus instead.

**{¶ 3}** Coles testified that as she walked toward the bus stop Bankston came after her and grabbed her by the hair. Coles ran back into the house, locked the door, and called 911. She testified that while she was on the telephone Bankston kicked open the front door. Frightened, Coles "dropped the phone and flew back into the bathroom," near the front door. (Tr. 110). As she lay on her back in the bathroom, Bankston stood over her and "had her by the hair with his other hand on her neck." (Tr. 111). Coles testified that Bankston pulled out some of her hair weave, along with some of her natural hair at the root. Then he left the bathroom, picked up their child, and ran out the door.

**{¶ 4}** When police officers arrived, they photographed Coles's scalp where the hair was removed, pieces of her removed hair, and the broken front door. While the officers were still there, Bankston called Coles. A police officer talked to him and told Bankston to return the child. About twenty minutes later, Bankston's cousin brought the child back. Bankston was eventually arrested.

**{¶ 5}** Before trial the parties stipulated to the fact that Bankston had been convicted

in 2009 for domestic violence against Coles, and, during the trial, this prior conviction was referred to several times.

{¶ 6}   The state played for the jury three recorded telephone conversations. The first recorded conversation was between Bankston and his mother, Sharon Maston, on March 16, 2010, while Bankston was in jail. It was played while Maston was testifying. The state wanted to use the recording to impeach her, but when Maston said that she did not remember the conversation, the court inquired of Maston whether the recording would refresh her memory. Apparently, after no response from the witness, the court asked the prosecutor, "Do you believe that playing the tape would refresh her recollection?"   (Tr. 144). The prosecutor said, "I do * * *" and the court allowed the playing of the tape.   The recording was twelve minutes long, and the jury heard it all. During their conversation, Bankston and his mother discussed the custody of Coles's children, Maston's and Coles's subpoenas, and the events of the domestic violence incident. Bankston told his mother that she would not get in trouble if she ignored her subpoena. Also, Bankston suggested that he would kidnap their child and retaliate against Coles. The second recorded conversation was between Bankston and the complaining witness, Coles, also while Bankston was in jail. The state sought to use this recording to impeach Bankston, when he testified in his own defense. This recording was fifteen minutes long, and again, the jury heard all of it. Bankston told Coles that he loved and cared for her, and he apologized for all the pain that he had caused her. When the state questioned him about his apology, Bankston denied that the apology was related to the events on March 7, 2010. The last recording was the 911 call that Coles made after Bankston grabbed her hair as she walked to the bus stop. Admission of the 911 call is not challenged in this appeal.

**{¶ 7}** Defense counsel objected to the playing of the two jailhouse recordings, but the court overruled each objection. The recordings were not admitted as exhibits for jury review, but they were played in open court during testimony. The court did not give the jury any limiting instructions concerning them; Bankston did not request any.

**{¶ 8}** The jury found Bankston guilty of domestic violence, and the court sentenced him to one year in prison. Bankston appealed.

**{¶ 9}** Bankston presents four assignments of error. He alleges that (1) his constitutional right to due process was violated when the trial court permitted the jury to hear the first two recorded conversations; (2) the court failed to give limiting instructions to the jury regarding the recordings and his prior domestic violence conviction; (3) he was denied his right to a fair trial under the Sixth and Fourteenth Amendments to the United States Constitution due to ineffective assistance of counsel; and (4) he was denied a fair trial due to the effect of cumulative error.

## 1. The Trial Court Improperly Permitted the Jury to Hear Recorded Conversations

**{¶ 10}** While no written transcript for the recordings is in the record, the audio-video transcript is, and we watched and listened as each conversation was played. Bankston argues that two of the recorded conversations were improperly played to the jury. We agree.

**{¶ 11}** This first conversation, between Bankston and Maston, his mother, was played while Maston was testifying. The state had filed a pre-trial motion asking the court to have Maston called as a court witness because the state suspected that Maston might give testimony that contradicted statements she made before trial. She was designated as a court witness. (Tr. 130). Admittedly, Maston was an evasive and recalcitrant witness. (Tr. 135, 140). On the

witness stand, the state asked Maston if she remembered a conversation she had with her son on March 16, 2010, at 12:35 p.m., while he was in jail. She replied, "I don't remember. If I did, I don't remember." (Tr. 139). The state also asked Maston whether she had seen, or whether she knew, that Bankston had pulled Coles's hair out. Maston replied, "So, he might – I don't know. I don't remember if he pulled her hair. I don't remember if I said he pulled her hair. All I said is the hair was right there. When she [Coles] said yes [to the police], I said yes. I don't know." (Tr. 140).

{¶ 12} The state then asked to play a recorded telephone conversation to impeach Maston. A sidebar discussion was conducted. Defense counsel objected, arguing: "She said that, so that's not for impeachment at this point if she said she could have said it. What's the reason? That's unduly prejudicial." (Tr. 141). The trial court overruled the objection and then instructed the prosecutor on how to proceed. After a few more "I don't know" and "I don't remember" answers, the state again asked if it could play the recording. The court inquired of Maston whether the recording would refresh her memory. Maston apparently did not respond. The court then asked the prosecutor, "Do you believe that playing the tape would refresh her recollection?" (Tr. 144). The prosecutor said "I do" and the court allowed the playing of the recording. Defense counsel indicated, "I'm just going to place my continuing objection" to which the court responded, "I understand." (Tr. 144). The entire conversation, just over ten minutes, was then played in open court. Maston identified the voices on the recording and, when asked if it was a complete and accurate recording of the conversation, stated, "[t]hat's our * * * that's us." (Tr. 145). Maston was asked no additional questions about the content of the recording. Later, the court refused to admit the recording as an

exhibit. No limiting instructions were requested or given to the jury regarding the conversation.

{¶ 13} It appears that this first telephone conversation was permitted in part for impeachment and in part to refresh Maston's memory. With respect to impeachment, the jury should not have heard the entire conversation. It needed to hear only the 30 seconds containing the arguably inconsistent statement, unless more was needed for context or completeness, which it was not. The testimony leading up to the playing of the conversation concerned whether Maston had discussed with Bankston his pulling of Coles's hair. So only the portion of the recording where Maston talks about Bankston "pulling the victim's hair out" needed to be played. The rest was hearsay and did not contain statements inconsistent with Maston's trial testimony.

{¶ 14} If the conversation was permitted to refresh Maston's memory, Maston should have listened to it privately, out of the jury's hearing. Evid.R. 612 permits a party to use a writing to refresh a witness's recollection. See *State v. Ballew*, 76 Ohio St.3d 244, 254, 1996-Ohio-81. But the party may not read the writing aloud, have the witness read it aloud, or otherwise place it before the jury. Id. The witness is to read the writing silently in order to refresh his or her memory. *Dayton v. Combs* (1993), 94 Ohio App.3d 291. If the witness's memory is refreshed, the witness then testifies using her refreshed present and independent knowledge. *State v. Scott* (1972), 31 Ohio St.2d 1, 5-6; *Dellenbach v. Robinson* (1993), 95 Ohio App.3d 358, 368. It is the witness's testimony, not the writing, that is the evidence. *State v. Wolfe* (June 17, 1996), Gallia App. No. 95CA04. Although Evid.R. 612 refers specifically to writings, anything can be used to refresh a witness's recollection, including audio

recordings. See 1 Gianelli & Snyder, Evidence (2001) 512, Section 612.4. But the same process should be used. The witness should review the material for refreshing of recollection out of the hearing of the jury.

{¶ 15} Undoubtedly, many of the topics discussed in the recorded conversation between Bankston and his mother were unduly prejudicial. For example, Bankston discussed whether his mother should ignore her subpoena, said that he would take his child, and said that he would retaliate against Coles. The conversation is laced with coarse and vulgar language. The jury heard Bankston say other things like, "when I get out of here, I'm going to take my daughter and they gone have to strap up to find us," and, "I should have beat her when I had the chance." None of these statements were inconsistent with Maston's testimony; all of them were unfairly prejudicial. For this first recording, the most that the trial court should have allowed the jury to hear–for impeachment purposes only–was very short.

{¶ 16} The second conversation, between Bankston and Coles, was played during the state's cross examination of Bankston himself. After stating that he did not recall a specific conversation with Coles on May 12, 2010, at 8:57 p.m., while he was in jail, Bankston further asserted that he did not recall apologizing to her, and if he did apologize, it was not for anything that occurred on March 7, 2010. Defense counsel stated, "Your honor, I'm going to make a continuing objection to the tape recording. * * * [H]e said he didn't recall. He didn't say no." (Tr. 180). The court overruled the objection and allowed the state to play the entire 15-minute recorded conversation. Bankston's "apology" to Coles occurs within the first four minutes. After it was played, Bankston was questioned about apologizing to Coles. Again, Bankston testified that he was not apologizing for his March 7 conduct. We note that in the

recorded apology, Bankston makes no specific reference to pulling out her hair or otherwise assaulting her on March 7.

{¶ 17} The trial court permitted the state to play this recording to impeach Bankston. Arguably, the apology is not inconsistent with his trial testimony. But whether it is or is not inconsistent we would leave to the sound discretion of the trial court. Regardless, the only portion of the recording that should have been permitted to be played was brief. Playing the remainder of the 15-minute conversation was error. Bankston's statements about how much he loves and cares for Coles, how he would have killed someone for Coles, and about Coles visiting him in jail were not inconsistent with his testimony and therefore not admissible for impeachment purposes.

{¶ 18} Moreover, the remainder of the recording was prejudicial, and most of the topics discussed were irrelevant. This conversation is also replete with obscenities. Bankston discusses how much he loves Coles and that if he loses his trial "they're gonna max me out." Bankston talks about how he would be happy to spend 18 months away from Coles but not away from his child. They discuss who was cheating on whom. The entirety of this recording should not have been played in the presence of the jury.

{¶ 19} We must next decide whether the admission of the otherwise inadmissible evidence constituted material prejudice to Bankston. In *State v. Harding*, Montgomery App. No. 20801, 2006-Ohio-481, at ¶24, this court stated: "Both Evid. R. 103(A) and Crim. R. 52(A) provide that error is harmless unless the substantial rights of a defendant have been affected." The test for harmless nonconstitutional error is whether "there is substantial evidence to support the guilty verdict even after the tainted evidence is cast aside * * *." *State*

*v. Cowans* (1967), 10 Ohio St.2d 96, 104. The test for harmless constitutional error is whether "'beyond a reasonable doubt' * * * the remaining evidence alone comprises 'overwhelming' proof of defendant's guilt." *State v. Williams* (1983), 6 Ohio St.3d 281, 290, certiorari denied (1983), 464 U.S. 1020, quoting *Harrington v.. California* (1969), 395 U.S. 250, 254. However, a nonconstitutional error may rise to the level of constitutional error if such error amounts to "a violation of the appellant's right to a fair trial as that term is understood under the due process clause of the Fourteenth Amendment." *State v. Davis* (1975), 44 Ohio App.2d 335, 348. Some courts have questioned the application of a more relaxed standard for evaluation of prejudice when non-constitutional errors are involved. See, e.g., *State v. Morris*, Medina App. No. 09CA0022-M, 2010-Ohio-4282. Nevertheless, in this case, the higher standard should be applicable because we perceive the introduction of over twenty minutes of inadmissible prejudicial phone conversations to be a violation of the appellant's right to a fair trial. Thus, we must examine if there is "overwhelming evidence of guilt" in the absence of the inadmissible evidence.

{¶ 20} The two inadmissible recordings played to the jury characterize the defendant as a callow, offensive, conniving dolt who is unworthy of the jury's consideration. The remaining evidence at the trial reveals that he probably pulled out one extension, including the root, of Coles's hair. We realize that by now he has undoubtedly served his prison sentence. But he was entitled to have a trial untainted by wholly inadmissible prejudicial evidence. While the remaining evidence in the present case is sufficient to support the conviction, it is not overwhelming. In this regard, we note that the verdict depended heavily on the jury's choice between the credibility of two sets of witnesses, and a photograph of one hair

extension. The complaining witness testified that the defendant pulled out her hair and choked her. (Tr. 111, 116). A photograph of the hair extension (State's Ex 1) and a photograph of where it had been pulled out (State's Ex 2) were admitted into evidence. The defendant's mother denied seeing the defendant pull out Coles's hair (Tr. 138), although in the recorded phone conversation with the defendant, mother accuses the defendant of pulling out Coles's hair and said that she saw it on the floor.[1] Sharoyna Grinnell, the defendant's sister, testified that she entered her mother's house immediately behind her brother and mother when the defendant kicked in his mother's door. She said she did not see him contact Coles at all. (Tr. 165-167). Finally, the defendant denied pulling Coles's hair or choking her. (Tr. 173). Under these circumstances, because the other evidence is not overwhelming, we cannot say that the errors were harmless beyond a reasonable doubt. Accordingly the judgment of conviction is reversed, and the case is remanded for further proceedings.

{¶ 21} The first assignment of error is sustained.

## 2. The Court Did Not Err by Failing to sua sponte Give Limiting Instructions Concerning Bankston's Prior Conviction

{¶ 22} In his second assignment of error, Bankston argues that the trial court erred in failing to give the jury limiting instructions regarding the use of both recordings and his prior conviction for domestic violence against Coles. Having determined that both recordings were inadmissible, we need not address the lack of a limiting instruction regarding their use. It makes little sense to require a limiting instruction for evidence that was not admissible. We will, though, address the lack of a limiting instruction regarding Bankston's prior conviction.

---

[1] Even if mother had clearly stated in the phone conversation that she saw the defendant pull out Coles's hair, that prior inconsistent statement would not be admissible as substantive evidence but only as impeachment.

{¶ 23} When a prior conviction determines the degree of an offense, rather than just enhancing the penalty, the prior conviction is not only admissible, but the state must prove it beyond a reasonable doubt. *State v. Allen* (1987), 29 Ohio St.3d 53; *State v. Harowski* (Sep 20, 1991), Montgomery App. No. 12232. Here the parties stipulated to Bankston's prior conviction for domestic violence. Bankston acknowledges that he did not request a limiting instruction. Therefore, we are limited to determining whether the trial court's failure to sua sponte give such an instruction is plain error. *State v. Cooper*, Montgomery App. No. 23143, 2010–Ohio–5517, at ¶ 11.

{¶ 24} We have previously held that the failure of a trial court to give an unrequested limiting instruction for "other acts" evidence is not plain error. *State v. Moore*, Greene App. No. 2010 CA 13, 2011-Ohio-636, at ¶ 24. Based on that holding, we find no plain error here. It is not apparent that Bankston would have been acquitted had the court provided the jury with a limiting instruction concerning his prior conviction.

{¶ 25} The second assignment of error is overruled.

**3. Defense Counsel Did Not Provide Ineffective Assistance**

{¶ 26} In his third assignment of error, Bankston argues that he was denied a fair trial due to ineffective assistance of counsel. To reverse a conviction based on ineffective assistance of counsel, the defendant must demonstrate both that counsel's conduct fell below an objective standard of reasonableness and that the errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different. *Strickland v. Washington* (1984), 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Bradley* (1989), 42 Ohio St.3d 136. Trial counsel is entitled to a strong presumption that his or

her conduct fell within the wide range of reasonable assistance. *State v. Crowley*, Clark App. No. 2009 CA 65, 2009-Ohio-6689, citing *Strickland*, at 688. Deficient performance means that claimed errors were so serious that the counsel was not functioning as the "counsel" that the Sixth Amendment guarantees. *State v. Cook* (1992), 65 Ohio St.3d 516, 524.

{¶ 27} Bankston argues that counsel was ineffective for failing to request limiting instructions for the recordings and his prior conviction, as well as failing to object when his prior conviction was referred to during trial and in closing remarks. Because we concluded above that much of the recordings was unduly prejudicial and should not have been admitted, we need not decide whether defense counsel's failure to request a limiting instruction for them was constitutionally deficient performance. Bankston's counsel effectively placed on the record a continuing objection to both recordings.

{¶ 28} Counsel was not ineffective for failing to request a limiting instruction concerning Bankston's prior conviction. Courts have determined that "debatable trial tactics do not constitute the ineffective assistance of counsel or plain error, and a competent attorney could reasonably choose not to seek a limiting instruction as a matter of trial strategy in order not to highlight [a defendant's] prior convictions." *State v. Kinney*, Ross App. No. 07CA2996, 2008-Ohio-4612.

{¶ 29} The third assignment of error is overruled.

**4. Bankston Was Not Denied a Fair Trial Due to Cumulative Error**

{¶ 30} Lastly, Bankston argues that his conviction should be reversed based on the effect of cumulative error. We disagree. Having determined that the recordings were highly prejudicial and inadmissible, they alone are sufficient to merit reversal of the conviction. But,

there are no other errors that we have found to cumulate. Accordingly, we cannot find that there is cumulative error.

{¶ 31} The fourth assignment of error is overruled.

{¶ 32} The judgment of the trial court is reversed. This case is remanded.

. . . . . . . . . . . . . .

FROELICH, J. and RICE, JJ., concur.

(Hon. Cynthia Westcott Rice, Eleventh District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.)

Copies mailed to:

Mathias H. Heck, Jr.
R. Lynn Nothstine
Richard D. Donenfeld
Hon. Frances E. McGee