[Cite as *State v. Goff*, 2023-Ohio-4823.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PICKAWAY COUNTY

STATE OF OHIO,                      :
                                    :
    Plaintiff-Appellee,             :        Case No. 22CA13
                                    :
v.                                  :
                                    :
                                    :        <u>DECISION AND</u>
NICHOLAS W. GOFF,                   :        <u>JUDGMENT ENTRY</u>
AKA:  NICHOLAS A. GOFF,             :
                                    :        **RELEASED 12/26/2023**
    Defendant-Appellant.            :

<u>APPEARANCES:</u>

April F. Campbell, Campbell Law, LLC, Dublin, Ohio, for Appellant.

Judy C. Wolford, Pickaway County Prosecutor, and Heather MJ Carter, Assistant
Pickaway County Prosecutor, Circleville, Ohio, for Appellee.

Smith, P.J.

{¶1} Appellant, Nicholas Goff, appeals the judgment of the Pickaway County Court of Common Pleas convicting him of 20 counts of pandering sexually oriented matter involving a minor, all third-degree felonies in violation of R.C. 2907.322(A)(5), and sentencing him to consecutive 12-month prison terms on each count resulting in an aggregate prison sentence of 240 months.  On appeal, Goff raises five assignments of error contending:  1) that his sentences should be reversed and that the trial court's decision to impose consecutive sentences should be vacated; 2) that there is clear and convincing evidence that the trial court's

imposition of Goff's sentences was contrary to law; 3) that the trial court erred in failing to merge Goff's offenses because he had one animus and engaged in one course of conduct; 4) that his sentences should be reversed because trial counsel was ineffective for failure to file a waiver of his fines despite a reasonable probability that the trial court would have waived them; and 5) that his sentences should be reversed because they were grossly disproportionate to similarly situated offenders. However, finding no merit in any of the assignments of error set forth for review, we affirm the judgment of the trial court.

## FACTS

{¶2} We initially note that Goff has failed to provide hearing transcripts to this Court.[1] Although his appellate brief cites to various different hearing transcripts, they are not part of the appellate record. Further, because this matter ultimately resulted in the entry of no contest pleas, the facts forming the basis of the charges herein are somewhat scant. However, it appears from the record that

---

[1] The record indicates that Goff filed a request for transcripts and sought an order from the common pleas court directing that they be prepared at the State's expense. Goff claimed that although his family had retained counsel for him, he himself was indigent. The trial court denied the request, citing the fact that there was no affidavit of indigency in the record. The record was thereafter transmitted to this Court on July 26, 2022, without transcripts. A notation on the online docket indicates that a transcript was later filed in the clerk's office on October 13, 2022, however, only the cover page of the transcript was scanned into the online docket. There is a notation on the docket that a copy of the first page of the transcript was placed into a folder and the original transcript was placed in the "depo drawer." There is no indication from the paper record on appeal nor the online docket maintained by the Pickaway County Clerk of Court that Goff ever filed a motion to supplement the record with the transcript. Moreover, it appears from the record that at least three hearings were held that may be pertinent to this appeal: 1) a motions hearing; 2) a change of plea hearing; and 3) a sentencing hearing. There is no indication from the online docket which hearing transcript was filed on October 13th. Thus, none of the hearing transcripts have been properly made part of the record on appeal.

on May 6, 2021, Goff was indicted on 39 third-degree felony counts of pandering sexually oriented matter involving a minor in violation of R.C. 2907.322(A)(5). He was also indicted on two fourth-degree felony counts of illegal use of a minor in nudity-oriented material or performance in violation of R.C. 2907.323(A)(3).[2] Counts 1 through 16 were alleged to have occurred on March 23, 2020, while counts 17 through 41 were alleged to have occurred on February 12, 2021. These charges stemmed from an investigation that began after Dropbox notified law enforcement that it had identified images containing child pornography in its database. The images were ultimately traced to Goff, which led to a further investigation including a search of Goff's residence and his eventual arrest.

{¶3} Goff initially pled not guilty to the charges but later entered into plea negotiations with the State which led to him entering "pleas of no contest, with a stipulated finding of guilt" to 20 of the counts charging him with pandering sexually oriented matter involving a minor, in exchange for the dismissal of the remaining pandering counts and the two counts of illegal use of a minor in nudity-oriented material. Ten of the counts to which Goff pled no contest appear to have been related to images and videos located within Goff's Dropbox account. The other ten counts appear to have been related to images and videos that were

---

[2] The degrees of these offenses were elevated because Goff had a previous conviction on May 15, 2014 for attempted pandering sexually oriented matter involving a juvenile.

subsequently found on Goff's cell phone that was located in his house after the execution of a search warrant.

{¶4} Both Goff and the State filed sentencing memorandums prior to sentencing and Goff also filed a pleading entitled "Fifth Amendment/Merger of Counts." In the latter pleading, Goff argued that his offenses should merge for purposes of sentencing because his "multiple offenses were similar, they were not committed separately, and they had one animus." He also argued that his conduct "did not victimize more than one person." His arguments were grounded in his claims that: 1) on March 23, 2020 "with one click of a mouse," he "downloaded one cache of suspected child porn and placed it into [his] drop box and viewed it four times;" and 2) that on February 15, 2015 "on [his] cell phone with one click," he "downloaded one cache of suspected child porn which remained on [his] phone." He further claimed that at the time of the downloads, "it was not possible to determine the number of photographs or the exact nature of the photographs." Goff also argued against the imposition of consecutive sentences in his sentencing memorandum. The State argued in its sentencing memorandum that the offenses to which Goff pled no contest did not merge and it further recommended that the trial court impose 12-month prison sentences on each of the 20 counts, to be served consecutively. A joint stipulation was filed below stipulating that the State "cannot

dispute" that the downloads into Dropbox and onto Goff's phone were each accomplished with "one click."

{¶5} After considering both sentencing memorandums and a psychological evaluation performed on Goff, the trial court sentenced Goff to 12-month prison terms on each of the counts and ordered that the prison terms be served consecutively to one another, resulting in an aggregate prison sentence of 240 months. The trial court further imposed a fine of $10,000, determined that Goff would be classified as a Tier III sexually oriented offender pursuant to R.C. 2950.01, and notified Goff that upon release from prison he would be subject to a mandatory period of post-release control for five years. The trial court issued a judgment entry of sentence on May 23, 2022, and it is from that order that Goff now appeals, setting forth five assignments of error for our review.

## ASSIGNMENTS OF ERROR

I.  GOFF'S SENTENCES SHOULD BE REVERSED, BECAUSE THE TRIAL COURT DECISION TO IMPOSE CONSECUTIVE SENTENCES SHOULD BE VACATED.

II. THERE IS CLEAR AND CONVINCING EVIDENCE THAT THE TRIAL COURT'S IMPOSITION OF GOFF'S SENTENCES WAS CONTRARY TO LAW.

III. THE TRIAL COURT ERRED IN FAILING TO MERGE GOFF'S OFFENSES TOGETHER BECAUSE HE HAD ONE ANIMUS AND ENGAGED IN ONE COURSE OF CONDUCT.

IV.    GOFF'S SENTENCES SHOULD BE REVERSED, BECAUSE TRIAL COUNSEL WAS INEFFECTIVE FOR FAILURE TO FILE A WAIVER OF GOFF'S FINES DESPITE A REASONABLE PROBABILITY THAT THE TRIAL COURT WOULD HAVE WAIVED IT.

V.     GOFF'S SENTENCES SHOULD BE REVERSED BECAUSE IT WAS [SIC] GROSSLY DISPROPORTIONATE TO SIMILARLY SITUATED OFFENDERS.

ASSIGNMENTS OF ERROR I AND II

{¶6} We address Goff's first and second assignments of error in conjunction with one another for ease of analysis.  In his first assignment of error, Goff contends that his sentences should be reversed and that the trial court's decision to impose consecutive sentences should be vacated.  More specifically, relying on statements made by the trial court during the sentencing hearing, Goff argues that the trial court imposed consecutive sentences not for the specific course of conduct that led to the commission of the offenses at issue in this case, but rather for the general course of conduct of his life, which he claims included "fathering three children through his wife, two of whom are autistic."  He further argues that his conduct in committing the offenses at issue was "less serious than what normally constitutes this offense" because he only possessed the images and videos at issue, and did not produce or distribute them and because he did not "[reach] out to any minors with sexual motivation."

{¶7} In his second assignment of error, Goff argues that the record contains clear and convincing evidence that the trial court's imposition of his sentences was contrary to law. More specifically, Goff argues that the record does not support "certain findings" made by the trial court during the sentencing hearing and thus, his sentences were contrary to law. He contends that the trial court "considered his marriage and his decision to father children as a sentencing factor[]" and that it "admonished him for meeting his wife over the internet." He argues that the trial court considered factors related to his marriage and fatherhood "as a basis for finding him not amenable to community control, and as a basis for sending [him] to prison."

{¶8} The State responds by arguing that the trial court considered the required sentencing factors and made the necessary findings before imposing consecutive sentences. The State further argues that aside from any statements made by the trial court regarding Goff's marriage and decision to have children, the imposition of consecutive sentences was supported by the record for a number of other reasons, including the facts that Goff pled guilty to 20 counts of child-related sexual crimes, that he had already been previously convicted of a similar offense and thus, had already demonstrated that he is a repeat offender.

Standard of Review

{¶9} "When reviewing felony sentences appellate courts must apply the standard of review set forth in R.C. 2953.08(G)(2)." *State v. Johnson*, 4th Dist. Adams No. 19CA1082, 2019-Ohio-3479, ¶ 7, citing *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 1, 7. R.C. 2953.08(G)(2) states as follows:

> [A]n appellate court may increase, reduce, modify, or vacate and remand a challenged felony sentence if the court clearly and convincingly finds either:
>
> (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;
>
> (b) That the sentence is otherwise contrary to law. (Emphasis added.)

*State v. Jordan*, 4th Dist. Adams No. 19CA1105, 2020-Ohio-3928, ¶ 7, quoting R.C. 2953.08(G)(2).

{¶10} "Clear and convincing evidence is 'that measure or degree of proof which * * * will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.' " *State ex rel. Husted v. Brunner*, 123 Ohio St.3d 288, 2009-Ohio-5327, 915 N.E.2d 1215, ¶ 18, quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118, paragraph three of the syllabus (1954). This Court has explained as follows regarding the review of felony sentences:

> " '[R.C. 2953.08(G)(2)] does not say that the trial judge must have clear and convincing evidence to support its findings. Instead, it is the court of appeals that must clearly and convincingly find that the record does not support the court's findings. In other words, the restriction is on the appellate court, not the trial judge. This is an extremely deferential standard of review.' "

*State v. Spangler*, 4th Dist. Athens No. 21CA17, 2023-Ohio-2003, ¶ 17, quoting

*State v. Pierce*, 4th Dist. Pickaway No. 18CA4, 2018-Ohio-4458, ¶ 8, in turn

quoting *State v. Venes*, 8th Dist. Cuyahoga No. 98682, 2013-Ohio-1891, 992

N.E.2d 453, ¶ 20-21.

### Consecutive Sentences

{¶11} There is a statutory presumption in favor of concurrent sentences

pursuant to R.C. 2929.41(A). "In order to impose consecutive terms of

imprisonment, a trial court must make the findings mandated by R.C.

2929.14(C)(4) at the sentencing hearing and incorporate its findings into its

sentencing entry, but the court has no obligation to state reasons to support its

findings." *State v. Blair*, 4th Dist. Athens No. 18CA24, 2019-Ohio-2768, ¶ 52,

citing *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659,

syllabus. This Court explained as follows in *State v. Cottrill* regarding the findings

required to support the imposition of consecutive sentences:

> "Under the tripartite procedure set forth in R.C. 2929.14(C)(4), prior to imposing consecutive sentences a trial court must find that: (1) consecutive sentences are necessary to protect the public from future crime or to punish the offender; (2) consecutive

sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; and (3) that one of three circumstances specified in the statute applies."

*State v. Cottrill*, 4th Dist. Ross No. 20CA3704, 2020-Ohio-7033, ¶ 14, quoting

*State v. Baker*, 4th Dist. Athens No. 13CA18, 2014-Ohio-1967, ¶ 35-36. Further,

as we explained in *Cottrill*, the three circumstances are as follows:

"(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

*Cottrill* at ¶ 14, quoting R.C. 2929.14(C)(4)(a)-(c).

{¶12} Any findings required by the applicable statutory sentencing

provisions and made by the sentencing court, such as those contained in R.C.

2929.14(C)(4)(c), must still be supported by the record. *State v. Gray*, 4th Dist.

Scioto No. 18CA3857, 2019-Ohio-5317, ¶ 21.

{¶13} In *State v. Gwynne*, -- Ohio St.3d --, 2022-Ohio-4607, -- N.E.3d --, ¶ 1-2 ("*Gwynne IV*"), a majority of the Court held that "the findings required by R.C. 2929.14(C)(4) to impose consecutive prison sentences on an offender 'must be made in consideration of the aggregate term to be imposed.' " *State v. Gwynne*, -- Ohio St.3d --, 2023-Ohio-3851, -- N.E.3d --, ¶ 2 ("*Gwynne V*"), citing *Gwynne IV*, *supra*. Additionally, in *Gwynne IV*, the Court concluded that

> appellate review of consecutive sentences did not require appellate courts to defer to the sentencing court's findings; rather, this court explained that "appellate courts * * * review the record de novo and decide whether the record clearly and convincingly does not support the consecutive-sentence findings."

*Gwynne V* at ¶ 2, quoting *Gwynne IV* at ¶ 1. However, the Supreme Court of Ohio has since departed from its prior reasoning in *Gwynne IV* and has now clearly held as follows:

> The plain language of R.C. 2953.08(G)(2) requires an appellate court to defer to a trial court's consecutive-sentence findings, and the trial court's findings must be upheld unless those findings are clearly and convincingly not supported by the record.

*Gwynne V* at ¶ 5.

{¶14} Thus, the Court has now clearly affirmed that an appellate court's application of a de novo standard of review to consecutive-sentence findings "is contrary to the plain language of R.C. 2953.08(G)(2)." *Gwynne V* at ¶ 16. This is because "[d]e novo review of a trial court's consecutive-sentence findings is

simply incongruous with the deference that the legislature stated an appellate court must give those statutory findings in the statutory language of R.C. 2953.08(G)(2)." *Id.*

Legal Analysis

{¶15} Again, we must note that this Court has not been provided with copies of any of the hearing transcripts and importantly, it does not have a copy of the change of plea and sentencing transcripts. Despite his failure to properly file the transcripts, Goff's arguments primarily hinge on statements allegedly made by the trial court during the sentencing hearing. Goff's reliance on portions of these transcripts in support of his arguments is improper in light of his failure to make these transcripts part of the appellate record. In *Knapp v. Edwards Lab*., 61 Ohio St.2d 197, 400 N.E.2d 384 (1980), the Supreme Court of Ohio held:

> "[w]hen portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the Court has no choice but to presume the validity of the lower court's proceedings, and affirm."

*Knapp* at 199.

{¶16} Based upon the authority of *Knapp* alone, we are authorized to simply presume the regularity of the record and the trial court's decision. However, we will nevertheless endeavor to review these assignments of error to the extent possible from the information that is properly before us.

{¶17} It does not appear that Goff disputes that the trial court made the findings required to impose consecutive sentences. However, he appears to argue that his course of conduct in committing the offenses alone, eliminating any consideration of his marriage and family situation, did not merit consecutive sentences. As set forth above, the basis of his argument seems to be that the trial court improperly admonished him for marrying and having children and used that course of conduct as the basis for imposing consecutive sentences. Again, without the benefit of the hearing transcripts, this portion of the argument cannot be reviewed.

{¶18} However, considering Goff's course of conduct alone in committing the offenses at issue, we conclude the record supports the imposition of consecutive sentences. As noted by the State, Goff pled guilty to 20 different counts of pandering sexually oriented material involving a minor. It appears from the record that each charge was based upon a different image or video and that the 20 counts stemmed from conduct that occurred on 2 different dates and on 2 different devices. The Seventh District Court of Appeals has determined that multiple images and videos uploaded on the same day can constitute a "course of conduct" justifying the imposition of consecutive sentences. *See State v. Bosley*, 7th Dist. Mahoning No. 16MA0100, 2017-Ohio-7643, ¶ 9-10 (which involved the uploading of 97 files of child pornography on the same day that contained multiple

images of 4 different child victims ranging in age from 2 to 12), citing *State v. Lucicosky*, 2017-Ohio-2960, 91 N.E.3d 152.

{¶19} In reaching its decision, the *Bosley* court relied upon the reasoning set forth in *State v. Duhamel*, 8th Dist. Cuyahoga No. 102346, 2015-Ohio-3145, which stated: " '[e]very video or image of child pornography on the internet constitutes a permanent record of that particular child's sexual abuse. The harm caused by these videos is exacerbated by their circulation.' " *Bosley* at ¶ 11, quoting *Duhamel* at ¶ 54. As observed in *Bosley*, "[i]mages depicting rape or abuse are far more harmful than solitary photographs of nude children." *Bosley* at ¶ 11, citing *Duhamel* at ¶ 55. Further, in reaching its decision, the *Bosley* court rejected the appellant's argument that all 97 files were obtained "by means of a mass download" and thus should merge for purposes of sentencing. *Bosley* at ¶ 12. The court reasoned that "Appellant pleaded guilty to fifteen separate counts of pandering[,]" and "[b]ecause he pleaded guilty to several separate counts, he cannot now argue that his behavior did not give rise to those separate counts." *Id.*

{¶20} The 20 counts of the indictment to which Goff entered pleas of no contest describe 20 different images and/or videos containing child pornography. The 20 different images/videos depict children ranging in age from infancy to what is described as "prepubescent." The 20 different images/videos depict unspeakable abuse, including both vaginal and anal rape, and involve both boys and girls,

sometimes with one another, sometimes with an adult or multiple adults, and at least one image depicted a female child bound and gagged while she was being raped by a hooded figure. The descriptions alone of the images and videos found on Goff's devices are the stuff of nightmares. Based upon the record before us, including the facts that Goff possessed multiple images on two different devices that appear to have been downloaded on two different dates, as well as the fact that it appears the images/videos involve different victims all of differing ages being subjected to different types of physical and sexual abuse, we find Goff's actions in committing the offenses at issue constituted a course of conduct sufficient to justify the imposition of consecutive sentences.

{¶21} Finally, we reject Goff's argument that his conduct in committing these offenses was "less serious" and thus did not constitute the worst form of the offense. Although we do not have the benefit of the sentencing hearing transcript, the sentencing entry states that the trial court considered the principles and purposes of sentencing as required by R.C. 2929.11 and that it had balanced the seriousness and recidivism factors as required by R.C. 2929.12. The entry further states that the trial court determined consecutive sentences were necessary to protect the public from future crime or to punish the offender, that consecutive sentences were not disproportionate to the seriousness of the conduct or the danger Goff poses to the public, and the court also found that at least two of the offenses

were committed as part of one or more courses of conduct and that the harm caused by the offenses was so great or unusual that no single prison term would adequately reflect the seriousness of Goff's conduct. The trial court also found that consecutive sentences were necessary to protect the public from future crime by Goff.

{¶22} Considering the description of the child sexual abuse material found in Goff's possession, the volume of the materials, as well as the fact that Goff had been previously convicted of a similar offense causing the felony level of each of his current crimes to be elevated as a result, we cannot clearly and convincingly find that the record does not support the trial court's findings it made pursuant to R.C. 2929.14(C)(4)(b) and (c). Moreover, we believe the record supports the trial court's necessity and proportionality findings. Accordingly, we find no merit in Goff's first and second assignments of error and they are overruled.

ASSIGNMENT OF ERROR III

{¶23} In his third assignment of error, Goff contends that the trial court erred in failing to merge his offenses because he had one animus and engaged in one course of conduct. Goff argues that his offenses were "closely related offenses arising from the same occurrence[]" that were not committed separately. He argues that he was only involved in one course of conduct and that he "possessed the images for which he was [convicted] with one click." The State responds by

arguing that each offense caused a separate and identifiable harm and therefore merger was not required.  In support of its argument, the State directs this Court's attention to the fact that "Ohio Courts have found that child sexual abuse material (CSAM) offenses are offenses of dissimilar import when each offense involves a *separate file or image*."  For the following reasons, we agree with the State.

### Allied Offenses of Similar Import

{¶24} The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb."  "This protection applies to Ohio citizens through the Fourteenth Amendment to the United States Constitution * * * and is additionally guaranteed by the Ohio Constitution, Article I, Section 10." *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 10. "Regarding multiple punishments for the same offense, the Double Jeopardy Clause prohibits 'the sentencing court from prescribing greater punishment than the legislature intended.' " *State v. Pendleton*, 163 Ohio St.3d 114, 2020-Ohio-6833, 168 N.E.3d 458, ¶ 8, quoting *Missouri v. Hunter*, 459 U.S. 359, 366, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983).  "When determining whether multiple punishments may be imposed for the same offense, our focus is on legislative intent." *Id.*

{¶25} "The General Assembly enacted R.C. 2941.25 to identify when a court may impose multiple punishments[.]" *State v. Fannon*, 2018-Ohio-5242, 117 N.E.3d 10, ¶ 130 (4th Dist.). R.C. 2941.25 states:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>
> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶26} "In determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must evaluate three separate factors— the conduct, the animus, and the import." *Ruff*, *supra*, at paragraph one of the syllabus. "Under R.C. 2941.25(B), a defendant whose conduct supports multiple offenses may be convicted of all the offenses if any one of the following is true: (1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus." *Id.* at paragraph three of the syllabus. Thus, "an affirmative answer to any of the above will permit separate convictions." *State v. Stapleton*, 4th Dist. Pickaway No. 19CA7, 2020-Ohio-4479, ¶ 51.

{¶27} Offenses are of dissimilar import "if they are not alike in their significance and their resulting harm." *Ruff* at ¶ 21. Additionally, "a defendant's conduct that constitutes two or more offenses against a single victim can support multiple convictions if the harm that results from each offense is separate and identifiable from the harm of the other offense." *Id.* at ¶ 26. Thus, "two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Id.* at ¶ 23. We further note that the defendant bears the burden to establish that R.C. 2941.25 prohibits multiple punishments. *See State v. Washington*, 137 Ohio St.3d 427, 2013-Ohio-4982, 999 N.E.2d 661, ¶ 18, citing *State v. Mughni*, 33 Ohio St.3d 65, 67, 514 N.E.2d 870 (1987).

## Standard of Review

{¶28} The sentencing court has a mandatory duty to merge allied offenses of similar import. *See State v. Stapleton* at ¶ 50. However, as set forth above, the defendant has the burden to establish that R.C. 2941.25 prohibits multiple punishments. *Id.* at ¶ 52. "We apply a de novo standard to review a trial court's determination of whether offenses constitute allied offenses of similar import requiring merger under R.C. 2941.25." *Fannon* at ¶ 131, citing *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 28.

Legal Analysis

{¶29} Here, based upon our review of the record, we cannot conclude that the trial court legally erred in imposing multiple punishments for 20 counts of pandering sexually oriented materials involving a minor. This Court explained in *State v. Stapleton*, *supra*, as follows:

> Ohio courts have found that child pornography offenses are offenses of dissimilar import when each offense involves a separate file or image. "Each child pornography file or image that is downloaded is 'a new and distinct crime.' " *State v. Mannarino*, 8th Dist. Cuyahoga No. 98727, 2013-Ohio-1795, 2013 WL 1859026, ¶ 53, quoting *State v. Eal*, 10th Dist. No. 11AP-460, 2012-Ohio-1373, ¶ 93; *accord State v. Davis*, 8th Dist. Cuyahoga No. 105523, 2017-Ohio-9169, 2017 WL 6539300, ¶ 42. "[M]ultiple convictions are allowed for each individual image because a separate animus exists every time a separate image or file is downloaded and saved." *State v. Mannarino*, 8th Dist. Cuyahoga No. 98727, 2013-Ohio-1795, 2013 WL 1859026, ¶ 53, quoting *State v. Hendricks*, 8th Dist. No. 92213, 2009-Ohio-5556, ¶ 35, citing *State v. Stone*, 1st Dist. No. C-040323, 2005-Ohio-5206; *State v. Yodice*, 11th Dist. No.2001-L-155, 2002-Ohio-7344; *accord State v. Hipps*, 7th Dist. No. 16 MA 0098, 2017-Ohio-7707, 96 N.E.3d 1265, 2017 WL 4174827; *State v. Pippin*, 1st Dist. No. C-160380, 2017-Ohio-6970, 94 N.E.3d 1186, 2017 WL 3169055, ¶ 50; *State v. Starcher*, 5th Dist. No. 2015CA00058, 2015-Ohio-5250, 2015 WL 9078463.

*Stapleton* at ¶ 54.

{¶30} *State v. Stapleton* involved the sending and receiving of multiple photos through text messages between the offender and one minor victim that all occurred on the same date. *Id.* at ¶ 44. Stapleton argued that all of the pandering

offenses "were committed with one animus, involved the same victim, the same act and occurred on the same date[,]" and therefore that they should have merged for purposes of sentencing. *Id.* This Court rejected that argument, reasoning that "[e]ach separate text message, photograph, and video resulted in a separate and identifiable harm." *Id.* at ¶ 59.

{¶31} Although the facts in *Stapleton* are admittedly different in terms of how the images were obtained and the volume of images, the facts sub judice lend themselves to multiple punishments in a way that the facts in *Stapleton* did not and are more egregious than the facts in *Stapleton* in some ways. For instance, *Stapleton* involved similar acts in each image/video and involved a single victim. *Id.* at 44. Here, the images/videos depict multiple different abusive acts against multiple different children. Further, Goff obtained these sets of images on two different dates and obtained them on two different devices.

{¶32} Moreover, even assuming Goff did obtain each and every image/video with a single click of the mouse, we find that the offenses were committed separately and involved separate victims and thus, the trial court did not err in refusing to merge them. *See State v. Mannarino*, *supra*, at ¶ 53 (finding that "[e]ach child pornography file or image that is downloaded is 'a new and distinct crime' " and that " 'multiple convictions are allowed for each individual image because a separate animus exists every time a separate image file is downloaded

and saved' "), quoting *State v. Eal*, *supra*, at ¶ 93 and *State v. Hendricks*, *supra*, at

¶ 35; *State v. Campbell*, 12th Dist. Butler No. CA2014-06-137, 2015-Ohio-1409

(rejecting argument that 20 different child pornography images downloaded on two

separate dates should merge where each charge was "specific to different images"

and reasoning that "the mere fact that the images were obtained or possessed on

the same day, even in rapid succession, does not prove that the actions were done

with the same animus"); *State v. Bosley, supra*, (rejecting argument for merger in

case involving the mass download of 97 images of child pornography in light of

the fact that the appellant had pled guilty to 15 separate counts of pandering); *State*

*v. Hipps, supra*, (holding offenses did not merge and finding that "each

downloaded file was a crime against a separate victim or victims").

{¶33} Further, the Seventh District Court of Appeals observed in *State v.*

*Hipps*:

> "As observed in *Duhamel*, the children depicted in the images or videos are the victims of the pandering offenses. *Id.*, 2015-Ohio-3145 [2015 WL 4656547], ¶ 61, citing *State v. Meadows*, 28 Ohio St.3d 43, 49, 503 N.E.2d 697 (1986). Further, [e]ach video and image presents a different child or group of children. Individuals who view or circulate child pornography harm the child in several ways (1) by perpetuating the abuse initiated by the creator of the material, (2) by invading the child's privacy, and (3) by providing an economic motive for producers of child pornography. *U.S. v. Norris*, 159 F.3d 926 (5th Cir. 1998). As previously stated, the dissemination of child pornography exacerbates and continues the exploitation and victimization of the individual child. *[New York v.] Ferber*, 458 U.S. 747 at 759, 102 S.Ct. 3348, 73 L.Ed.2d 1113 [ (1982) ]; *See also U.S. v.*

*Sherman*, 268 F.3d 539, 545 (7th Cir. 2001) (even a "passive consumer who merely receives or possesses the images directly contributes to this continuing victimization."). *State v. Duhamel*, 8th Dist. Cuyahoga No. 102346, 2015-Ohio-3145 [2015 WL 4656547], ¶ 61."

*Hipps, supra,* at ¶ 15, quoting *State v. Starcher*, *supra*, at ¶ 35-37.

{¶34} In light of the foregoing, we conclude that the offenses at issue are not allied offenses of similar import despite the fact they may have been obtained with one click of the mouse. On two separate dates on two different devices, each image/video possessed by Goff was a crime against a separate victim or victims and each image/video was possessed with a separate animus. Thus, we find no error on the part of the trial court in imposing multiple punishments upon Goff for these offenses. Accordingly, Goff's third assignment of error is overruled.

## ASSIGNMENT OF ERROR IV

{¶35} In his fourth assignment of error, Goff contends that his sentences should be reversed because his trial counsel was ineffective for failing to file a waiver of his fines, despite a reasonable probability that the trial court would have waived them. More specifically, Goff argues that his trial counsel was ineffective for failing to file an affidavit of indigency on his behalf prior to sentencing and for failing to file a motion to address the fine that was imposed. He further argues that he suffered prejudice as a result. He cites to the transcript in support of an

argument that the trial court stated that it would consider a waiver of the fine, but again, the transcripts have not been made part of the appellate record.

{¶36} The State responds by arguing that even if we find the trial court would have waived Goff's fine had trial counsel requested the court to do so, such a determination would not result in the reversal of Goff's sentences. The State notes that although Goff claims he is now indigent and was indigent at the time of sentencing, an affidavit of indigency was never filed. The State further points out that Goff had retained counsel during the pendency of his case, has retained counsel on appeal, and that he posted a considerable appeal bond. Additionally, the State notes that although Goff requested that a transcript be provided to this Court at State's expense, that the request was denied for failure to file an affidavit of indigency. The State contends that Goff cannot now argue that a motion to waive the fine would have been granted at sentencing when his indigency has yet to be determined.

Standard of Review

{¶37} "To demonstrate ineffective assistance of counsel, a defendant 'must show (1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that, but for counsel's errors, the proceeding's result would have been different.' " *State v. Holdren*, 4th Dist. Pickaway No. 20CA3, 2021-Ohio-810, ¶

32, quoting *State v. Short*, 129 Ohio St.3d 360, 2011-Ohio-3641, 952 N.E.2d 1121, ¶ 113, in turn citing *Strickland v. Washington*, 466 U.S. 668, 687-688, 694, 104 S. Ct. 2052 (1984). Failure to demonstrate either prong of this test "is fatal to the claim." *See State v. Jones*, 4th Dist. Scioto No. 06CA3116, 2008-Ohio-968, ¶ 14, citing *Strickland*, *supra*.

{¶38} "A defendant 'has the burden of proof because in Ohio, a properly licensed attorney is presumed competent.' " *Holdren, supra*, at ¶ 33, quoting *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 62, citing *State v. Calhoun*, 86 Ohio St.3d 279, 289, 714 N.E.2d 905 (1999), in turn citing *Vaughn v. Maxwell*, 2 Ohio St.2d 299, 209 N.E.2d 164 (1965). "In order to overcome this presumption, the petitioner must submit sufficient operative facts or evidentiary documents that demonstrate that the petitioner was prejudiced by the ineffective assistance." *Holdren* at ¶ 33, citing *State v. Davis*, 133 Ohio App.3d 511, 728 N.E.2d 1111 (8th Dist.1999). To demonstrate prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland* at 694.

Legal Analysis

{¶39} Goff contends that his trial counsel was ineffective for failing to move the trial court to waive the imposition of a fine.  Underlying this contention is his argument that his retained trial counsel was also ineffective for failing to file an affidavit of indigency on his behalf.  He asserts that there was a reasonable probability that if trial counsel had done both of these things, the trial court would have waived imposition of the fine.

{¶40} R.C. 2947.23 provides for costs to be included in a criminal sentence. In all criminal cases a judge must include in the sentence the costs of prosecution and render a judgment against the defendant for such costs, even if the defendant is indigent.  R.C. 2947.23(A)(1)(a).  However, a trial court retains jurisdiction to waive, suspend, or modify the payment of the costs "at the time of sentencing or at any time thereafter."  R.C. 2947.23(C).  A trial court may waive court costs, but it is not required, if a defendant is indigent.  (Citations omitted).  *See State v. Hale*, 5th Dist. Perry No. 19CA14, 2020-Ohio-1399, ¶ 16.

{¶41} In *State v. Davis*, 159 Ohio St.3d 31, 2020-Ohio-309, 146 N.E.3d 560, the Supreme Court of Ohio held that when an indigent defendant makes an ineffective assistance of counsel claim based upon counsel's failure to request a waiver of court costs, a court must objectively consider the facts and circumstances to determine whether the defendant established the necessary prejudice sufficient

to support that claim (i.e., but for counsel's deficient performance, a reasonable probability exists that the result of the proceeding would have been different). *See Hale, supra*, at ¶ 18. The Court also pointed out that a determination of indigency alone does not rise to the level of creating a reasonable probability that the trial court would have waived costs had defense counsel requested the court to do so. For example, if a court finds that a defendant has the ability to work and pay court costs in the future, the court may decide to not waive court costs. In *Hale* it was observed that a court must look at all the circumstances that the defendant sets forth in attempting to demonstrate prejudice and determine whether there is a reasonable probability that the trial court would have granted a motion to waive costs had one been made. *Id.* at ¶ 19. *See Davis, supra*, at ¶ 15.

{¶42} Here, however, we are faced with an argument regarding the waiver of fines, not costs. In *State v. Webb*, the Fifth District Court of Appeals observed as follows:

> * * * Ohio law does not prohibit a court from imposing a fine on an "indigent" defendant. That is, the filing of an affidavit of indigency does not automatically entitle a defendant to a waiver of a mandatory fine. *State v. Knox*, 8th Dist. Cuyahoga Nos. 98713 and 98805, 2013-Ohio-1662, [2013 WL 1791391], ¶ 36. Under Ohio law, a trial court must impose a mandatory fine unless (1) the offender files an affidavit of indigency prior to sentencing, and (2) "the trial court finds that the offender is an indigent person and is unable to pay the mandatory fines." *State v. Gipson*, 80 Ohio St.3d 626, 634, 687 N.E.2d 750 (1998). In making its indigency determination, the court must consider both

the offender's present and future ability to pay the fine. R.C. §
2929.19(B)(5).

Additionally, the trial court need not make an "affirmative
finding that an offender is able to pay a mandatory fine." *Id.* at
635 [687 N.E.2d 750]. Instead, "the burden is upon the offender
to affirmatively demonstrate that he or she is indigent and is
unable to pay the mandatory fine**."** *Id.* We review the trial
court's decision to impose a fine on an indigent defendant for an
abuse of discretion. *State v. Ficklin*, 8th Dist. Cuyahoga No.
99191, 2013-Ohio-3002, [2013 WL 3583030], ¶ 5.

*State v. Webb*, 5th Dist. Richland No. 14-CA-85, 2015-Ohio-3318, ¶ 23-24. *See
also State v. Warren*, 5th Dist. Fairfield No. 18-CA-42, 2019-Ohio-2927, ¶ 93.

{¶43} R.C. 2929.19 states in section (B)(5) that "[b]efore imposing a
financial sanction under section 2929.18 of the Revised Code or a fine under
section 2929.32 of the Revised Code, the court shall consider the offender's present
and future ability to pay the amount of the sanction or fine." As further noted in
*Warren, supra,* "[t]he Ohio Supreme Court, however, has held that even if an
affidavit of indigency is timely and properly filed, a defendant 'is not automatically
entitled to waiver of that fine.' " *Warren* at ¶ 96, quoting *State v. Gipson*, 80 Ohio
St.3d 626, 634, 1998-Ohio-659, 687 N.E.2d 750. Instead, "[t]here must be a
showing that a defendant is unable to pay the fines, and there is no affirmative duty
on the trial court to make a finding that a defendant is able to pay." *Gipson* at
syllabus.

{¶44} *Warren* also explained that although ineffective assistance may be found if the record reveals a probability that a trial court would have found the defendant indigent and unable to pay the fine had trial counsel filed an affidavit of indigency, "[b]ecause information regarding an appellant's finances would most often lie outside the record on direct appeal, the appropriate place to pursue this question will generally be in a hearing for post-conviction relief under R.C. 2953.21." *Warren* at ¶ 99, citing *State v. Williams*, 105 Ohio App.3d 471, 482, 664 N.E.2d 576 (8th Dist, 1995); *State v. Stearns*, 8th Dist. Cuyahoga No. 71851, 1997 WL 626024, *3 (Oct. 9, 1997), and *State v. Booker*, 63 Ohio App.3d 459, 466, 579 N.E.2d 264 (2d Dist.1989).

{¶45} Here, as noted by the State, the record before us reveals that Goff had retained counsel at the trial court level and also has retained counsel at the appellate court level. Further, he successfully moved for a stay of his sentence and in doing so was able to satisfy the requirements of a $250,000.00 appeal bond. Based upon the information that is in the record before us, we cannot conclude that there was a reasonable probability that trial court would have granted a motion to waive the fine had such a motion been made. Further, because Goff's income and financial information lies outside of the record on appeal, we have no information from which to conclude that trial counsel was ineffective for failing to file an affidavit of indigency. Thus, we reject Goff's argument that his trial counsel was

ineffective for failing to request waiver of his fine and, for lack of information in the record, we cannot address his argument that trial counsel was ineffective for failing to file an affidavit of indigency. Accordingly, Goff's fourth assignment of error is overruled.

## ASSIGNMENT OF ERROR V

{¶46} In his fifth and final assignment of error, Goff contends that his sentences should be reversed because they are grossly disproportionate to similarly situated offenders. Goff argues that "the record demonstrated that the trial court failed to consider Goff in comparison to similarly situated offenders, despite trial counsel offering those comparisons to the Court." Goff cites to a transcript which has not been provided to this Court in support of this statement. The State contends that the trial court considered the required sentencing factors and made the requisite findings in imposing the sentences and it rejects Goff's assertions that the trial court failed to consider the sentences imposed upon similarly situated offenders in light of the fact that both Goff and the State provided the court with sentencing memorandums prior to sentencing.

### Standard of Review

{¶47} We have already set forth the standard of review to be employed when reviewing felony sentences. Building upon that, R.C. 2929.11(B) states that a felony sentence should be "consistent with sentences imposed for similar crimes

committed by similar offenders." This Court has observed that " ' "[a] consistency-in-sentencing determination * * * is a fact-intensive inquiry that does not lend itself to being initially reviewed at the appellate level." ' " *State v. Taylor*, 2017-Ohio-4395, 9 N.E.3d 1, ¶ 29 (4th Dist.), quoting *State v. Adams*, 2016-Ohio-7772, 84 N.E.3d 155, ¶ 46 (4th Dist.), in turn quoting *State v. Montanez-Roldon*, 8th Dist. Cuyahoga No. 103509, 2016-Ohio-3062, ¶ 14. We have further stated that

> " '[A]ny review must begin with the defendant producing a record for the trial court's consideration before the final sentence is imposed. As courts have long concluded, a "defendant must raise [the consistency-in-sentencing] issue before the trial court and present some evidence, however minimal, in order to provide a starting point for analysis and to preserve the issue for appeal.' "

(Citations omitted.) *Taylor* at ¶ 29, quoting *Adams* at ¶ 46, quoting *Montanez-Roldon* at ¶ 14.

{¶48} Moreover, another court has concluded that " '[a] list of child pornography cases is of questionable value in determining whether the sentences imposed are consistent for similar crimes committed by similar offenders since it does not take into account all the unique factors that may distinguish one case from another.' " *State v. Starcher, supra*, at ¶ 39, quoting *State v. Siber*, 8th Dist. Cuyahoga No. 94882, 2011-Ohio-109, ¶ 15. As in *Starcher*, one such unique factor in the case sub judice is that Goff has a prior conviction for a similar offense. *Starcher* at ¶ 39.

Legal Analysis

{¶49} Although we do not have any hearing transcripts and in particular, the sentencing hearing transcript, Goff filed a sentencing memorandum prior to sentencing which described himself as "a closet pedophile who likes to watch[]" who "now understands these images depict real persons and his viewing of them perpetuates the continued cycle of victimization of children." Goff's sentencing memorandum requested that he be sentenced to an inpatient program, arguing in part that his conduct was less serious than that normally constituting the offense and because he was not likely to recidivate. Goff relied on the results of a psychological report that was performed on him, as well as statistics demonstrating that "[t]he sexual recidivism rate for all non-production child pornography offenders was only 4.3%."

{¶50} Goff also provided the trial court with information related to two similarly situated offenders. The first example provided by Goff involved a defendant convicted for two second-degree felony counts of pandering and one fourth-degree felony count of pandering who was ultimately sentenced to four years, four to six years, and one year, respectively, to be served consecutively. The second example involved a defendant who was convicted of one second-degree felony count of pandering and 16 fourth-degree felony counts of pandering. That defendant was sentenced to 8 to 12 years on the first count and 12 month sentences

each on the other 16 counts, which were ordered to be served concurrently to each other and concurrently to the 8 to 12 year sentence, for a total sentence of 8 to 12 years for 17 counts. Goff argued that "he is guilty of two counts of Pandering, one possession for his drop box and one possession for his cell phone and that all other counts should merge as one animus to possess on two different occasions existed. One click, one cache, one drop box then viewed."

{¶51} The State's sentencing memorandum noted Goff's prior conviction as well as the fact that each of the current charges were enhanced felonies in light of that prior conviction. The State further noted that the sentencing range for each offense to which Goff had pled was 12 months to 60 months, and it recommended that Goff be sentenced to minimum prison terms of 12 months on each of the 20 counts, to be served consecutively. The State directed the trial court's attention to four different cases from four different appellate districts, all of which determined that counts for pandering did not merge for purposes of sentencing because "each file obtained constitutes a new and distinct crime" and that offenses should not be merged where "each offense involves a separate file or image."

{¶52} Here, we have already determined that the trial court made all of the requisite findings to justify the imposition of consecutive sentences and that the record supports the imposition of those sentences. We have also already determined that based upon the facts and circumstances in the record, the trial

court did not err in refusing to merge these offenses for purposes of sentencing. Further, despite the fact that we do not have the benefit of a sentencing hearing transcript, the record demonstrates that the trial court considered the record in imposing sentence, and the record included sentencing memorandums from both Goff and the State as detailed above. For all of these reasons, we cannot conclude that the trial court failed to consider the sentences imposed on other similarly situated offenders, or that the sentences imposed upon Goff were grossly disproportionate to other similarly situated offenders. Accordingly, we find no merit to arguments raised under Goff's fifth assignment of error and it is therefore overruled.

{¶53} Having found no merit to any of Appellant's assignments of error, the judgment of the trial court is affirmed.

**JUDGMENT AFFIRMED.**

## JUDGMENT ENTRY

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Pickaway County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J., & Hess, J., Concur in Judgment and Opinion.

For the Court,

_____
Jason P. Smith
Presiding Judge

## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**